A96A2532, A96A2533. JENNINGS ENTERPRISES, INC. et al.
v. CARTE; and vice versa.

(481 SE2d 541)

McMurray, Presiding Judge.

Plaintiff Charles Carte brought this tort action against defendants Jennings Enterprises, Inc. ("JEI") and Robbie Jennings, alleging that in March 1992, plaintiff entrusted a certain red "1987 Mercedes 560 SEL automobile," to defendants for storage and safekeeping, to which bailment defendants assented; but that in "December, 1992, the Mercedes disappeared from Defendants' place of business." Plaintiff demanded "the sum of $20,000, . . . plus pre-judgment interest at 7% per annum from the date of loss, plus expenses of litigation." Plaintiff also asserted a claim for attorney fees. Defendants denied the material allegations, and the case was tried to the State Court of Carroll County, Georgia, without the intervention of a jury.

Viewed in the light most favorable to the trial court's judgment, the evidence showed that, in October 1991, the law firm of Smith & Diment obtained a judgment in favor of their client, plaintiff Charles Carte, against one Sultan Shabazz in the principal amount of $40,442.78. Execution was levied on one of two Mercedes motor vehicles owned by Shabazz, whereby defendant JEI was summoned by "Travis Lumpkin, who is a [Fulton County] sheriff's deputy employed . . . to assist [the law firm] with the levy," to tow a gray Mercedes to its lot in Carrollton, Georgia. Mr. Shabazz subsequently turned over "the physical title [certificate], as well as the keys . . ." to the red 1987 Mercedes at issue. It was agreed that "if he [Mr. Shabazz] came to Carrollton and brought . . . 15,000 dollars in cash, we [the law firm] would return the car to him." The next day, J. Nevin Smith, plaintiff's counsel, "spoke with [defendant,] Mr. [Robbie] Jennings and turned the [red] car over to him and requested they store it with inside storage and explained to him that we needed to be sure that the car wasn't damaged because we were responsible for it until the date of the sheriff's sale." Mr. Smith "advised a member of the Jennings staff that they should take particular care because Mr. Shabazz might come out there and try to steal it." Counsel was subsequently notified that the judgment debtor filed for bankruptcy and so an advertised sale of the car was indefinitely postponed. "At no time did anybody from Jennings contact us [at the law firm] about moving the Mercedes or about terminating the storage." Although the firm was billed for storage of the gray car, it received no invoice or "bill from Jennings . . . for storage that went unpaid with respect to this [red] Mercedes[.]" Mr. Smith "had a conversation with the bankruptcy trustee, [and] was asked to produce the vehicle . . ." as an asset of the bankruptcy estate. When Mr. Smith telephoned JEI, "[he] was told that the car was not there that it had been sold and

that [he would] have to speak with Mr. Jennings about it." But "Mr. Jennings refused to give . . . any information about the sale." The bankruptcy trustee agreed to compromise plaintiff's claim against the bankruptcy estate by "assigning the Trustee's rights in and to the Mercedes Benz and against Jennings Towing and Recovery to Mr. Carte. . . ." This agreement was approved by Honorable James E. Massey of the United States Bankruptcy Court for the Northern District of Georgia. In return, plaintiff agreed to reduce his "claim against the bankruptcy estate [by] 20,000 dollars." Don Alan Denney, president of Scott Denney Motors, a used car company on Bankhead Avenue, testified that, in his opinion, the "wholesale value of that particular vehicle at that time, [December 1992,] not the retail, the wholesale value would have been 21,000 dollars." The wholesale value of the car was $19,200 in April 1994.

Defendant Robbie Jennings affirmed that defendant "Jennings Enterprises, Inc. accepted both [of] the Mercedes and agreed to store them. . . ." In October 1992, Robbie Jennings "deemed the vehicle abandoned," and "arranged for a public auction." But then he gave Elizabeth Ramey, who was listed as the buyer on the bill of sale and who was the woman he was dating at the time, "525 dollars to turn around and give back to [him]." On December 19, 1992, Robbie Jennings as seller executed a bill of sale to the Mercedes with Elizabeth Ramey as buyer. The very next day, Elizabeth Ramey as seller executed another bill of sale to the car, reciting that defendant Robbie Jennings bought the vehicle for $2,500. He refused the law firm's request for the car's return because "the car was sold." Robbie Jennings agreed that Mr. Smith "never told [him] that the car had been abandoned." He never billed the firm for storage and never directly notified plaintiff or the law firm of his intent to sell the vehicle at auction as an abandoned vehicle. An auction announcement was, however, published twice in the local newspaper. Defendant affirmed he personally "received notice of the bankruptcy . . . in January, 1993, when [he] had this telephone call with [Mr. Smith] after [defendant] had already sold the car [to Elizabeth Ramey]." Defendant thus "acquired the car from Elizabeth Ramey after [he] had notice of the bankruptcy. . . ." Elizabeth Ramey affirmed that defendant Robbie Jennings "asked [her] if [she] could put the car in [her] name because it would look better." She also testified that defendant Robbie Jennings never paid her the $2,500 mentioned in the bill of sale dated December 20, 1992.

The trial court awarded plaintiff $20,000 in compensatory damages but denied his requests for pre-judgment interest, punitive damages, and attorney fees. In Case No. A96A2532, defendants appeal from this judgment, and in Case No. A96A2533, plaintiff cross-appeals. *Held*:

## Case No. A96A2532

1. Defendants first contend the trial court erred in concluding that a December 1, 1992, judgment of the Magistrate Court of Carroll County, Georgia, foreclosing on defendants' claim of lien on the Mercedes for towing and storage, was void because it violated the automatic bankruptcy stay. They argue that the authority cited by the trial court no longer represents the interpretation of 11 USC § 362 employed by the United States Court of Appeals for the Eleventh Circuit. We disagree.

"In the Fifth Circuit, . . . actions in violation of the automatic stay are deemed voidable rather than void, and must, therefore, be affirmatively challenged in order to be set aside. . . . In the Eleventh Circuit, on the other hand, actions in violation of the stay are . . . void *ab initio*. Such acts are deemed 'without effect' and are rendered an absolute nullity." *Barnett Bank &c. v. Trust Co. Bank &c.*, 178 B. R. 570, 578. In the case sub judice, the trial court correctly concluded that defendants' judgment foreclosing a claim of lien on property belonging to the bankruptcy estate was void for being in violation of the automatic stay in bankruptcy provided by 11 USC § 362. That judgment was void ab initio, was without effect, and was an absolute nullity.

2. Defendants next contend the State Court of Carroll County, Georgia, was without subject matter jurisdiction to hear a collateral attack on the judgment of the Magistrate Court.

A careful reading of the trial court's well-reasoned judgment clearly indicates the court appreciated that it had no equitable authority. The court expressly stated it was not setting aside the judgment of the Magistrate Court but was giving priority to the order of the United States Bankruptcy Court. This enumeration is without merit.

3. Defendants enumerate the denial of their motion for directed verdict, made on the ground that plaintiff lacked standing to bring this action because no valid assignment of the trustee's rights in the car and claim against defendants was formally made until February 19, 1996, that is, the day before trial. But the document executed on February 19, 1996, by James R. Marshall as Trustee in Bankruptcy for Sultan K. Shabazz expressly recites: "This assignment is made as of April 10, 1994." Consequently, defendants' argument that plaintiff was not the real party in interest is without merit.

## Case No. A96A2533

4. In his cross-appeal, plaintiff first contends the trial court erred in refusing to award pre-judgment interest under OCGA § 7-4-

15, arguing that the damages claimed were liquidated.

"As a matter of law, unliquidated demands arising ex delicto do not bear interest; and on a suit to recover the value of property which has been injured or destroyed, the jury can not legally find a given amount for principal with an additional amount as interest." *Western & Atlantic R. Co. v. Brown*, 102 Ga. 13 (hn. 1) (29 SE 130). " 'We understand by liquidation an amount certain and fixed, either by act and agreement of the parties, or by operation of law; a sum which can not be changed by the proof; it is so much or nothing; and that the term does not necessarily refer to a writing.' *Nisbet v. Lawson*, 1 Ga. [275,] 287. The word 'liquidated,' as used in the statute . . . means 'settled, acknowledged, or agreed.' *Parris v. Hightower*, 76 Ga. 631." *Council v. Hixon*, 11 Ga. App. 818, 826 (4), 827 (76 SE 603). In the case sub judice, there was no agreement by either defendant that a certain amount was owed plaintiff. Rather, the proof of plaintiff's damages was the expert opinion testimony of Don Alan Denney, that is, his estimate of the fair market value of the car. This factor alone makes any damage award to plaintiff unliquidated. *Marathon Oil Co. v. Hollis*, 167 Ga. App. 48, 51 (3), 52 (305 SE2d 864). Consequently, the trial court correctly refused to award pre-judgment interest.

5. Plaintiff enumerates the refusal of the trial court to award attorney fees and the expenses of litigation pursuant to OCGA § 13-6-11, arguing that defendants acted in bad faith.

"The issue of attorney fees under OCGA § 13-6-11 is a question for the factfinder. [Cit.]" *Crotty v. Crotty*, 219 Ga. App. 408, 412 (4) (465 SE2d 517). "Bad faith is not simply bad judgment or negligence, but it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will." (Citations and punctuation omitted.) *Michaels v. Gordon*, 211 Ga. App. 470, 472 (2), 473 (2) (b) (439 SE2d 722). "When a trial court sits as both judge and jury, the court's findings of fact are binding on appeal, and, unless wholly unsupported or clearly erroneous, will not afford a basis for reversal. On appeal, this court must not substitute its judgment for that exercised by the trial court when there is some support for the trial court's conclusion. Our duty is not to weigh evidence de novo, but [merely to] determine if there is any evidence which supports the judgment below. Even in the face of conflicting evidence, the trial court's judgment will be upheld as long as there is 'any evidence' to uphold the lower court's determination." (Citations and punctuation omitted.) *Edwards v. Wilson*, 185 Ga. App. 514, 515 (1) (364 SE2d 642).

Plaintiff refers to evidence that would have authorized a finding of bad faith on the part of defendants. But the trial court concluded that defendants' acts, however questionable in appearance, "[did] not

rise to the level of bad faith. Defendants' formally requesting vehicle title and lienholder information and running the legal ad, considered with the lack of evidence of the auction being chilled or not open to all bidders, is significant in this regard." In our view, plaintiff has failed to show error by the trial court's reliance on mitigating circumstances to reach its ultimate determination that defendants did not act in bad faith. The trial court's refusal to award OCGA § 13-6-11 attorney fees and expenses of litigation is supported by the evidence and is consequently affirmed.

*Judgment affirmed in Case Nos. A96A2532 and A96A2533. Johnson and Ruffin, JJ., concur.*

DECIDED JANUARY 27, 1997 —
RECONSIDERATION DENIED FEBRUARY 10, 1997 —

*Word & Mitchell, Gerald P. Word*, for appellants.
*Smith & Diment, Dana G. Diment, William G. Hamrick III*, for appellee.