A01A0028. EAST BEACH PROPERTIES, LTD. v. TAYLOR et al.
A01A0029, A01A0030. TAYLOR et al. v. RYALS; and vice versa.
(552 SE2d 103)

BLACKBURN, Chief Judge.

The land involved in this case has been the subject of litigation for over 30 years. The case involves a dispute over the extent of the permissible use of easements owned by lot owners in the East Beach subdivision of St. Simons Island. The easements have been previously defined by our Supreme Court in *Smith v. Bruce*[1] and *Bruce v. Garges.*[2] Several suits concerning the use of these easements were filed and consolidated in the Superior Court of Glynn County. The trial court entered a judgment as a matter of law, and several parties appeal. The consolidated appeals are decided herein.

In *Smith,* the Supreme Court held that the then owners of the underlying fee, part of which is now owned by East Beach Properties, Ltd. and part by Glynn County, owned the land between the street that ran along the subdivision and the mean high water line, subject to the rights of the lot owners of the East Beach subdivision. The Court held that each lot owner owned an easement "to use such open area as a soft beach for all recreational purposes soft beaches can be used for, and as a means of ingress and egress from the subdivision lots and streets to the smooth, hard beach area and ocean." *Smith,* supra at 142 (1).

We turn now to the recent developments. Philip Taylor and 32 other lot owners[3] in the East Beach subdivision (hereinafter referred to as the "Taylor Group") filed an action to enjoin James Timbes, another lot owner, and his contractor, Winston Ryals d/b/a J. R. Construction, from "clear-cutting" a portion of the natural growth of wild

---

[1] *Smith v. Bruce,* 241 Ga. 133 (244 SE2d 559) (1978).

[2] *Bruce v. Garges,* 259 Ga. 268, 270 (1) (379 SE2d 783) (1989).

[3] Richard Anderson, Lisa Anderson, Donald Bartlett, Mary Bartlett, Ralph Birdsong, Mary Birdsong, Laura Brown, Mary Bell Capallo, Joan Chatham, Ann Clendenin, John Clendenin, Patricia Collins, Denise Esserman, Edward Esserman, Jacqueline Heyward, Robert Heyward, Billie Huggins, Bobby Huggins, Louise Kinzey, Hilliard Kinzey, Ann Kite, Jack Kite, Luanne Lanyon, Carolyn Mastin, Peter Mastin, Dorothy McCleskey, A. L. Rogers, Ann Rogers, Jean Russell, John Weitnauer, Jr., Bonnie Whitten, Ted Whitten, and East Beach Association, Inc.

scrub on the land subject to the easement. The Taylor Group also requested nominal and punitive damages and attorney fees.

Timbes filed a counterclaim, seeking a declaratory judgment that he be allowed to mow, clear, and grade the property as an exercise of his unlimited easement rights as set forth in *Smith* and later discussed in *Bruce*. Paula Carol and some other lot owners[4] filed a separate action against the Taylor Group and East Beach Properties and others. When the actions were consolidated in the trial court, the Carol Group's action was aligned with James Timbes (collectively referred to as the "Timbes Group").

The basic contentions of the parties are as follows: The Taylor Group contends that the Timbes Group's alteration of the property impaired its right to use the easement for beach access and recreation. The Timbes Group contends that pursuant to *Smith* and *Bruce*, they have the unfettered right to make physical alterations to the property so long as the other property owners are not denied access to the beach. They maintain that clearing the land facilitates rather than hampers the recreational use of the property. East Beach Properties, the owner of part of the underlying fee, contends that it has the right to make alterations, including building on the property so long as such alterations do not interfere with the easement rights of the lot owners. East Beach Properties also contends that the easement rights do not extend to the accreted land.

The trial court ruled that the Taylor Group lacked standing to enjoin the Timbes Group from altering the easement property by removing vegetation because this conduct did not impair their right to use the easement for beach access or recreation. The trial court also ruled that East Beach Properties was entitled to bar any alterations to the property that exceed what is necessary to permit beach access by the lot owners. It further ruled that East Beach Properties and its invitees were authorized to use or alter the easement property in any manner that "does not interfere with beach access and customary soft sand beach activities by said lot owners," and that does not interfere with the lot owners' use of their easement.

The trial court also ruled that James Timbes and the other lot owners were enjoined from altering the vegetation on the land subject to the easement beyond what is absolutely necessary to permit access to the beach on foot, without first obtaining consent from East Beach Properties on the land owned by East Beach Properties and a permit from Glynn County on the land owned by the County.

---

[4] Charles Caye, Dean Davidson, and Marie Davidson.

*Case No. A01A0028*

East Beach Properties appeals the trial court's order, contending that the trial court erred by ruling that (1) the filing of a certain plat by the developer of the property represented to prospective buyers that there was no real property subject to future development between Beach Drive and the Beach; (2) the filing of the plat was the functional equivalent to a covenant running with the land on the subject property; (3) the development of the accreted property may be effectively precluded because the lot owners have a nonexclusive right to the entire accreted property pursuant to *Smith*, supra; (4) East Beach Properties could not construct buildings and other improvements that do not substantially interfere with the easement; and (5) the trial court could not define what East Beach Properties could do on the property without violating the rights of the easement holders because the rights of the easement holders had not sufficiently accrued within the meaning of the Declaratory Judgment Act.

1. In its first two enumerations of error, East Beach Properties argues that the ruling in *Smith* does not establish that there was no real property subject to future development on the beach. We disagree because this issue was already resolved in *Smith* and *Bruce*.

In *Smith*, supra at 142 (1), the Supreme Court held that each lot owner had an easement "to use such open area as a soft beach for all recreational purposes soft beaches can be used for, and as a means of ingress and egress from the subdivision lots and streets to the smooth, hard beach area and ocean."

After *Smith*, the land between the high water line and the street continued to accrete. In *Bruce*, the Bruces, the former owners of the underlying fee now owned by East Beach Properties, appealed the trial court's refusal to limit the easement to the original area subject to the easement prior to the accretion of the land. Our Supreme Court upheld the trial court's decision, determining that the *Smith* Court "did not intend to limit the lot owners' recreational use to any area less than that which lies between the high water line and East Beach Drive and which is subject to expansion or contraction by the forces of nature." *Bruce*, supra at 271 (3) (b). The *Bruce* Court concluded that "just as the rights of the fee holder expand with the accreted land, so do the rights of the easement holder where such a broad grant has been made." Id. at 272 (3) (b). Thus, as the facts stand, the property subject to the easement can only be developed in the future subject to the rights of the lot owners despite the accretion of the property. We cannot revisit issues decided by the Supreme Court.

In two enumerations of error, East Beach Properties argues that the trial court erred by ruling that the development of the accreted

property may be precluded because of the lot owners' nonexclusive right to use the property set forth in *Smith*. East Beach Properties asserts that because the topography of the accreted land has naturally evolved over the years to be more maritime forest-like, the lot owners' easement in the soft sand beach "is no longer applicable to the accreted land." Again, this issue in controlled adversely to East Beach Properties by *Bruce*.

2. East Beach Properties asserts that the trial court's order conflicts with *Upson v. Stafford*,[5] in which this Court held that one of the owners of a nonexclusive easement lawfully constructed a drainage ditch on the property subject to the easement because such construction did not encroach upon the second easement holder's rights. Id. at 616. The first easement holder also lawfully removed trees that had served as a buffer between the easement holders' separate tracts of land because the second easement holder had "no right to a buffer of trees, either expressly or as a reasonably necessary incident of any of the purposes of his easement." Id. This Court also acknowledged that "unless the easement is exclusive, the grantor may construct buildings or other improvements on the land which do not 'substantially interfere' with the enjoyment of an easement previously granted." Id.

East Beach Properties asserts that, under *Upson*, it should be allowed to construct buildings and other improvements that do not substantially interfere with the easement. In upholding the trial court's ruling, we emphasize that the trial court did not rule that no development of the land could take place. Rather, the trial court ruled that East Beach Properties had not submitted a proposed plan and thus its ruling on what structures could be erected would be an advisory opinion, which is prohibited by the Declaratory Judgment Act. The court commented that, given the broad grant given to the lot owners, "development (except perhaps as a purely recreational area without residential or commercial structures) may be effectively precluded." Indeed, our Supreme Court has held that the owner of the underlying fee cannot develop the property to the extent it interferes with the easement holder's rights. *Fairfield Corp. No. 1 v. Thornton*.[6]

3. East Beach Properties argues that the trial court erred by ruling that it could not define what it could do with the property without violating the easement holders' rights because such a ruling would be an advisory opinion, which is prohibited under the Declaratory Judgment Act. We disagree.

Pursuant to the Declaratory Judgment Act, superior courts are

---

[5] *Upson v. Stafford*, 205 Ga. App. 615 (422 SE2d 882) (1992).
[6] *Fairfield Corp. No. 1 v. Thornton*, 258 Ga. 805, 806 (374 SE2d 727) (1989).

authorized to enter a declaratory judgment in cases of "actual controversy" and

> "to determine and settle by declaration any justiciable controversy of a civil nature where it appears to the court that the ends of justice require that such should be made for the guidance and protection of the petitioner, and when such a declaration will relieve the petitioner from uncertainty and insecurity with respect to his rights, status, and legal relations."

*Baker v. City of Marietta.*[7] See also OCGA § 9-4-2. "However, no declaratory judgment may be obtained which is merely advisory, or fruitless, or which merely answers a moot or abstract question." (Citations and punctuation omitted.) Id. at 214 (1).

It is well settled that,

> [f]or a controversy to justify the making of a declaration, it must include a right claimed by one party and denied by the other, and not merely a question as to the abstract meaning or validity of a statute. There can be no justiciable controversy unless there are interested parties asserting adverse claims upon a state of facts which have accrued.

(Citations omitted.) *Cook v. Sikes.*[8]

It would be nearly impossible for the trial court in this case to rule what construction East Beach Properties could or could not undertake. East Beach Properties essentially requested that the trial court interpret the Supreme Court decisions in *Smith* and *Bruce*, supra, in the abstract. If East Beach Properties sought a declaratory judgment on a specific proposal, the trial court could enter a judgment if all of the other requirements under the Declaratory Judgment Act are met. Such is not the case in the present litigation.

### Case No. A01A0029

4. In three enumerations, the Taylor Group argues that the trial court erred by ruling that it could not recover damages from the Timbes Group and denying it of its right to a jury trial on the issue.

Earlier in the litigation, the trial court denied the Timbes Group's motion for summary judgment on the damages issue. In its final order, however, the trial court ruled that the Taylor Group was

---

[7] *Baker v. City of Marietta,* 271 Ga. 210, 213 (1) (518 SE2d 879) (1999).
[8] *Cook v. Sikes,* 210 Ga. 722, 726 (82 SE2d 641) (1954).

not entitled to damages because Timbes' "clear-cutting" of a portion of the property did not interfere with their use of the easement for its intended purposes. Thus, in its final order, the trial court granted the Timbes Group's motion for summary judgment on the damages issue although it did not couch this ruling as such.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[9]

Viewed in this light, John Pitts, who was hired by the Timbes Group, deposed that, at James Timbes' direction, he cut "the sand dunes and everything," including vines, weeds, bushes, small myrtles, and sea oats on the subject property. When Pitts went over the dunes with a bush hog, he knocked off some of the tops of the dunes.

Timbes deposed that he did not think that using the accreted land for enjoyment in its natural state was an "appropriate" recreational use of the land. Timbes stated that when the land is cleared, "it's very nice, and a lot of people would enjoy it even more looking at it instead of looking at the brush and the scrub that has grown up." Timbes agreed that it was all right to clear the land so that people could play softball, hit golf balls, or throw footballs and frisbees.

Under Georgia law, " '[r]ecreational purpose' includes, but is not limited to, any of the following or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, . . . and viewing or enjoying historical, archeological, scenic, or scientific sites." OCGA § 51-3-21 (4). We cannot say, as a matter of law, that Timbes' clearing of the property did not interfere with the Taylor Group's easement to use the land for recreational purposes other than those listed by Timbes, such as enjoying the land in its natural uncut state. Therefore, issues of fact preclude summary judgment as to whether the Taylor Group is entitled to damages. We reverse the ruling of the trial court on this issue.

5. The Taylor Group argues that the trial court erred by failing to enjoin the Timbes Group from altering the easement property by removing vegetation from the property. We disagree.

On appeal from the grant of a permanent injunction, " 'the standard of review is whether or not the trial court manifestly abused its

---

[9] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

discretion.' " *Teachers' Retirement System &c. v. Forehand.*[10] A "trial judge manifestly abuses [her] discretion when [she] grants an injunction adverse to a party without any evidence to support such judgment and contrary to the law and equity." Id.

In denying injunctive relief to the Taylor Group, the trial court found that "[t]he evidence establishes that Mr. Timbes cleared more of the growth upon the easement property owned by Glynn County [and] East Beach Properties than was necessary for reasonable beach and ocean access." The court held that the Taylor Group was not entitled to injunctive relief because Timbes' actions did not interfere with the Taylor Group's use of the easement for recreational and other purposes specified in *Smith*, supra.

The requirement for an easement holder to obtain an injunction against another easement holder is strict: "[T]he holder of an easement must be adversely affected, or substantially or materially interfered with, in order to enjoin another owner's unauthorized use. Otherwise, the remedy lies in the owner of the underlying fee." (Citations omitted.) *Upson*, supra at 617.

Although a jury issue remains as to whether the Taylor Group was damaged by the Timbes Group's clear-cutting the property, the trial court did not err in denying its request for injunctive relief. We note that the standards of review with respect to a summary judgment ruling and a ruling on a permanent injunction are quite different. Moreover, although the Taylor Group cannot enjoin the Timbes Group from altering the property, the trial court ordered that it cannot make any alterations to the property without the consent of East Beach Properties. The court further enjoined East Beach Properties from allowing any alterations to be made which interfere with the lot owners' easement rights. Thus, although the Taylor Group itself was denied an injunction, the trial court's other rulings have addressed the Taylor Group's concerns. We affirm the ruling of the trial court on this issue.

6. The Taylor Group argues that the trial court erred by issuing an injunction in favor of East Beach Properties and Glynn County against only James Timbes and not the remainder of the Timbes Group. The Timbes Group, however, concedes that the trial court's ruling applies to all of the property owners in the East Beach subdivision.

It is apparent from the trial court's order that its ruling applies to all of the lot owners, not only to Timbes or to the Timbes Group. Therefore, this enumeration is without merit.

---

[10] *Teachers' Retirement System &c. v. Forehand*, 234 Ga. App. 437, 438 (506 SE2d 913) (1998).

7. The Taylor Group argues that the trial court erred by enjoining the lot owners from altering the property beyond what is required to ensure beach access without first obtaining permission from the owners of the underlying fees, East Beach Properties and Glynn County. The Timbes Group agrees with the Taylor Group on this enumeration and further asserts that the term "open area" in the judicial grant of the easement allows the lot owners to alter the property to create open areas for recreational soft beach activities without first obtaining permission. We disagree.

"The rights not granted under an easement remain in the landowner." *Montana v. Blount*.[11] The grant of the easement, as defined in *Smith* and *Bruce*, though broad, did not include the right to alter the property unilaterally. Although the Supreme Court in *Smith*, supra at 142 (1), stated that the lot owners had an easement "to use such open area as a soft beach for all recreational purposes soft beaches can be used for," this judicial holding was not a guarantee that the lot owners would necessarily have open areas of soft sand beach to use for recreational purposes. Indeed, the Court in *Bruce*, supra at 271 (3) (b), acknowledged that the land was "subject to expansion or contraction by the forces of nature." The *Bruce* Court concluded that "just as the rights of the fee holder expand with the accreted land, so do the rights of the easement holder where such a broad grant has been made." Id. at 272 (3) (b). Thus, the Supreme Court's opinion contemplated changes in the land. The Court foresaw that the forces of nature could affect the property rights of both the lot and underlying fee owners.

Having found no abuse of discretion, we uphold the trial court's injunction requiring that the easement holders receive permission from the owners of the underlying fee before making any alterations to the property beyond what is required to ensure beach access. See *Teachers' Retirement System*, supra. That said, the owners of the underlying fee, in deciding whether or not to grant such permission, should be mindful of the broad grant given to the easement holders, as defined in *Smith* and *Bruce*, supra.

8. The trial court ruled that "[b]ecause the nature of the rights at issue herein were uncertain due to the peculiar status of the judicially-created easement in question, each party shall bear its own attorney fees and expenses of litigation." The Taylor Group argues that it was entitled to recover attorney fees and expenses from the Timbes Group pursuant to OCGA § 13-6-11. We disagree.

We review a trial court's denial of attorney fees under OCGA § 13-6-11 under an abuse of discretion standard. *Rivergate Corp. v.*

---

[11] *Montana v. Blount*, 232 Ga. App. 782, 785 (1) (a) (504 SE2d 447) (1998).

*Atlanta Indoor Advertising Concepts.*[12] Under OCGA § 13-6-11, the expenses of litigation "generally shall not be allowed as a part of the damages" a jury may allow them "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." A final ruling on attorney fees and expenses may be premature because the issue of damages has not yet gone to a jury. We find no abuse of discretion by the trial court with respect to its ruling on attorney fees.

### Case No. A01A0030

The Timbes Group also appeals the trial court's ruling. The Timbes Group's enumerations are addressed in Division 7.

*Judgment affirmed in Case Nos. A01A0028 and A01A0030. Judgment affirmed in part and reversed in part and case remanded in Case No. A01A0029. Pope, P. J., and Mikell, J., concur.*

DECIDED JULY 9, 2001 —
RECONSIDERATION DENIED JULY 31, 2001 — 

*Abbott & Abbott, Anthony H. Abbott, Laurie K. Abbott,* for East Beach Properties, Ltd.

*George M. Rountree,* for Taylor et al.

*Christopher J. O'Donnell,* for Ryals.

---

[12] *Rivergate Corp. v. Atlanta Indoor Advertising Concepts,* 210 Ga. App. 501, 504 (4) (436 SE2d 697) (1993).