## A03A2198, A03A2199. WACHOVIA BANK OF GEORGIA, N.A. v. NAMIK et al.; and vice versa.
(593 SE2d 35)

JOHNSON, Presiding Judge.

In these cases, we are asked to decide whether Wachovia Bank of Georgia breached its fiduciary duties as trustee by causing an estate to pay what the estate contends were unnecessary and avoidable estate taxes. Following a bench trial, the trial court found in favor of the Bank on counts alleging breach of fiduciary duty as administrator, self-dealing as trustee, stubborn litigiousness, tort, and punitive damages. The trial court found in favor of Issam Namik, Suzan Namik, Jinan Namik, Sundus Namik, and Hadia Mahmoud (collectively "Namik") on counts alleging breach of fiduciary duty as trustee for failure to avoid estate taxes and breach of fiduciary duty and breach of contract for failure to invest the trust funds in accordance with alleged instructions. The trial court awarded damages of $1,118,710 to Namik. In Case No. A03A2198, the Bank appeals the trial court's final order awarding damages to Namik. In Case No. A03A2199, Namik appeals the trial court's final order, contending he was entitled to greater damages.

The record shows that General Ali, an Iraqi citizen and a nonresident alien, traveled to Atlanta from Iraq in March 1989 for a three-week visit with his son, Issam Namik. While in Atlanta, Ali telephoned Switzerland and arranged for a wire transfer from a Swiss bank account to the Bank. Ali and Namik then visited a branch of the Bank to confirm the wire transfer, and Ali purchased a $350,000 one-year CD with the money that had been transferred. Ali transferred additional funds to the Bank, at which time he purchased a $350,000 eighteen-month CD, as well as a $2,650,000 six-month CD (the "Jumbo CD") on March 15, 1989. After purchasing the Jumbo CD, Ali arranged to come back to the Bank to obtain information on investment options.

The next day, Ali returned to the Bank and met with Tom Slaughter, a trust officer for the Bank. Slaughter met with Ali and Namik for approximately two hours, and Slaughter reviewed the Revocable Living Trust Agreement ("Trust Agreement") with Ali paragraph by paragraph. After their discussion, Ali executed the Trust Agreement. No one at the Bank had any contact with Ali after this meeting.

When the Jumbo CD matured on September 11, 1989, Slaughter

prepared a one-page interoffice memorandum to his supervisor recounting the origin of Ali's trust account. The Slaughter memorandum explained how the Trust was to be funded and indicated that Ali wanted "no market risks" and had requested that his funds be invested "only in U. S. Government issues." David Addison, a Bank trust officer assigned to the account, attempted to contact Ali at addresses in Atlanta and Iraq, at a telephone number in Iraq, and by request through Namik, but was unable to locate Ali.

According to the Bank, the Slaughter memorandum did not provide sufficient information to determine Ali's investment goals and create a permanent investment program, and Ali could not be reached to discover his investment objectives, so the Bank invested the Trust funds in a tax-free Fidelity money market fund to maintain liquidity and protect the principal until the Bank could ascertain Ali's long-term objectives. Over a year later, the Bank learned that Ali had been imprisoned upon his return to Iraq. In mid-1994, Namik advised the Bank that Ali had died in prison in May 1990. Ali apparently had no will, and after a dispute during which Namik sued the Bank in an attempt to have the Trust funds paid directly to him, the Bank was appointed as administrator of Ali's estate.

Ali's estate was subject to United States estate tax, and the estate paid $933,248.49 in estate taxes to the Internal Revenue Service and the Georgia Department of Revenue. Because of the lapse of time between the date the return was due and the date of actual filing, $542,018.01 in interest was also assessed and paid. The remaining assets were paid to Ali's heirs.

### Case No. A03A2198

The crux of this case is Namik's claim that the Bank breached its fiduciary duties as trustee by failing to consider the estate tax consequences of its investment decisions and by disregarding Ali's specific instructions regarding investment intent. Namik argues that this failure caused Ali's estate to pay unnecessary and avoidable estate taxes and interest. The trial court held that the Bank breached its duties by failing to invest the Trust funds in one of the investment options suggested by an interoffice memorandum as the options desired by Ali. The Bank argues that it had no duty while acting as trustee under a revocable living trust agreement to undertake estate planning for Ali or to consider the estate tax consequences of investments of the Trust funds. The Bank further claims that the interoffice memorandum prepared by Slaughter was inadmissible to vary the clear language of the Trust Agreement. Because the Bank's position is correct under Georgia law, we reverse the judgment in this case.

1. The trial court erred in holding that the Bank, as the trustee of a simple revocable living trust, had a duty not disclosed in the instrument to provide estate tax planning advice to Ali and to consider tax consequences of its investments.

Clearly, trustees may invest the funds of their trusts in accordance with the provisions pertaining to investments contained in the instrument under which they are acting.[1] In so doing, or in the absence of any such provision in the instrument, a trustee is obligated to exercise the standard of care set out in OCGA § 53-12-287. This statute reads in relevant part:

> (b) In acquiring, investing, reinvesting, exchanging, retaining, selling, and managing property for the benefit of another, a trustee shall exercise the judgment and care, under the circumstances then prevailing, that a prudent person acting in a like capacity and familiar with such matters would use to attain the purposes of the account. In making investment decisions, a trustee may consider the general economic conditions, the anticipated tax consequences of the investments, the anticipated duration of the account, and the needs of its beneficiaries. (c) . . . The propriety of an investment decision is to be determined by what the trustee knew or should have known at the time of the decision about the inherent nature and expected performance of the investment (including probable yield), the attributes of the portfolio, the general economy, and the needs and objectives of the beneficiaries of the account as they existed at the time of the decision. . . .[2]

This statute mandates that whether the trustee is prudent in the doing of an act depends upon the circumstances as they reasonably appear to him at the time when he does the act and not at some subsequent time when his conduct is called in question. The test is not whether, in hindsight, a more lucrative investment could have been made measured from the standpoint of safety, value, income, or tax consequences. Rather, the question is whether, under the circumstances then prevailing, a prudent man would have acted differently.

Merely demonstrating that the Bank was unaware of certain tax consequences and that the estate would have paid lesser taxes had the Bank invested the Trust in tax-free U. S. government issues does not necessarily translate into a breach of the Bank's fiduciary duty to

---

[1] See generally *Perling v. C & S Nat. Bank*, 250 Ga. 674, 675-678 (1) (300 SE2d 649) (1983).

[2] OCGA § 53-12-287.

Namik. As long as trustees act in good faith and from proper motives and within the bounds of a reasonable judgment under the terms and conditions of the trust, the court has no right to interfere. It is only when trustees act outside the bounds of a reasonable judgment, or are guilty of an abuse of discretion, or when they act dishonestly and improperly that the court may interfere.

Here, the Bank was acting as trustee of a revocable living trust. Such trusts are vehicles for investment purposes; they are not vehicles for estate-planning purposes and generally, as in this case, have no testamentary provisions. In addition, it is undisputed that the Bank had no knowledge that Ali anticipated imminent death or contemplated a need for testamentary planning.

Moreover, while the statute suggests that anticipated tax consequences may be taken into account, in this case there was no obligation on the part of the Bank to look into estate tax consequences. The record is devoid of any evidence showing that Ali requested the Bank to specifically make investments to minimize estate tax consequences of the Trust, and the Trust Agreement does not impose any duty upon the trustee to take estate taxes into consideration or to otherwise make any estate-planning decisions. Rather, the clear terms of the Trust Agreement provide sole investment discretion to the Bank. Paragraph 4 of the Trust Agreement provides that the Bank "shall hold, manage, invest, and reinvest the said property in its discretion." Paragraph 5 further confers upon the Bank all of the powers in the Georgia Code and provides that "[s]aid powers and others granted herein shall be exercised in the sole discretion of my Trustee without order or approval or report to any court."

The trial court's order effectively requires any bank making any investment on behalf of a customer to consider the estate tax consequences of that investment. There is no such requirement under Georgia law. No Georgia law requires a trustee of a revocable living trust to consider estate tax consequences of investments or to invest trust funds to minimize estate taxes. The applicable statute merely indicates that "a trustee *may* consider . . . the anticipated tax consequences of the investments."[3]

In addition, the Supreme Court of Georgia has held that a fiduciary has no duty to inform itself and advise the beneficiary of obscure tax laws.[4] Namik relies on provisions of the Internal Revenue Code which provide an exemption from estate taxes for assets of a nonresident alien which are invested in certain investments, including U. S. government issues.[5] However, it is undisputed that at the time of the

---

[3] (Emphasis supplied.) OCGA § 53-12-287 (b).
[4] *Robbins v. Nat. Bank of Ga.*, 241 Ga. 538, 543 (2) (246 SE2d 660) (1978).
[5] See IRC §§ 871 (a) (1), (h), (i); 1441 (a), (c) (9).

Bank's investment of the Trust funds in 1989, the rule was unclear as to whether short-term investments in U. S. government issues would have exempted the estate from estate tax. The rule was by definition obscure: it was "not perspicuous, not clearly expressed, vague, hard to understand."[6] It was not until 1997, after Ali's estate was probated, that the Internal Revenue Code rule was clarified regarding short-term investments in U. S. government issues. According to the clarification, only an investment in government issues with a maturity of over 183 days would have exempted the estate from estate tax. There is no evidence in the record that the Bank would have chosen to invest the Trust in long-term rather than short-term U. S. government issues.

2. In an attempt to avoid the Bank's lack of duty to ascertain estate taxes and invest accordingly, Namik contends that the Bank breached its fiduciary and contractual duties by failing to properly consider Ali's investment directives, as memorialized in the Slaughter memorandum. In determining whether actions of a trustee were proper or in accordance with the trustee's fiduciary duties, "the cardinal rule is that the trustor-settlor's intention be followed."[7] We look first and foremost to the language in the Trust Agreement, and we interpret that language to effectuate the intent of the settlors.[8] "We turn to parol evidence only if the trust instrument is ambiguous, and we find no ambiguity here."[9]

In this case, the Trust Agreement is a valid, complete written agreement with regard to the types of investments in which the trustee was authorized to invest under the Trust Agreement, and its terms in this regard are not ambiguous. The Trust Agreement provides that the trustee "shall hold, manage, invest, and reinvest the said property in its discretion." Namik's argument that Ali intended for the Bank to invest only in U. S. government issues is not supported by the Trust Agreement. The only reference to such an investment directive occurs in the context of a one-page interoffice memorandum where a Bank employee summarizes his recollection of a two-hour conversation that took place six months previously. We can find no language restricting the trustee's investment options in the Trust Agreement, and if Ali had intended to place such restrictions on the trustee, such a provision could easily have been inserted in the Trust Agreement.[10]

The Slaughter memorandum should not have been admitted to

---

[6] Black's Law Dictionary (5th ed. 1979), p. 971.

[7] *Griffith v. First Nat. Bank &c. Co.*, 249 Ga. 143, 146 (1) (287 SE2d 526) (1982).

[8] *Ferst v. Ferst*, 208 Ga. App. 846, 847 (432 SE2d 227) (1993).

[9] *Ovrevik v. Ovrevik*, 242 Ga. App. 95, 97 (1) (527 SE2d 586) (2000).

[10] See *Griffith*, supra.

vary the terms of the Trust Agreement because it constitutes parol evidence inadmissible under Georgia law.[11] The memorandum was not written contemporaneous with the Trust Agreement and was not made a part of the Trust Agreement.[12] In addition, with regard to the types of investment to be made by the trustee, the Slaughter memorandum does not serve to explain any ambiguities in the Trust Agreement, but would completely change the discretion provided in the Trust Agreement.[13] "Where the contract is complete on its face and the evidence offered to explain the ambiguity contradicts the terms of the written instrument, it should not be admitted."[14] Moreover, parol evidence of an understanding arrived at subsequent to the contract as to the meaning of the prior writing is inadmissible.[15] The Bank was not authorized to deviate from the terms of the Trust Agreement and comply with recollections of one of its employees.

In addition, contrary to Namik's assertion, the Slaughter memorandum is not a contract between Ali and the Bank. It therefore did not impose additional duties on the Bank. The Slaughter memorandum does not contain the necessary elements to create a contract.[16] This Court has rejected a similar argument, finding that the plaintiff's assent to a similar memorandum was neither requested nor given and, therefore, there was no evidence of mutual agreement to create a contract.[17]

Namik contends that the Slaughter memorandum must be used to identify the Trust property because Schedule A of the Trust Agreement, which identifies the Trust property, was incomplete. Therefore, Namik concludes, the memorandum may also be admitted to show the types of investments desired by Ali. We disagree. It is well established that parol evidence is admissible to explain an ambiguity in a written contract, but is inadmissible to add to, take from, or vary the writing itself.[18] Thus, parol evidence can be considered only to resolve a specific ambiguity in a document, not to alter the entire document.

"Contrary to [Namik's] contentions, the ambiguity appearing on the face of the instrument did not throw open the gates for admission of parol evidence."[19] Here, the Slaughter memorandum was admis-

---

[11] See OCGA §§ 13-2-2; 24-6-1.

[12] See *Redfearn v. C & S Nat. Bank*, 122 Ga. App. 282, 284 (1) (176 SE2d 627) (1970).

[13] See id. at 285.

[14] *American Cyanamid Co. v. Ring*, 248 Ga. 673, 674 (286 SE2d 1) (1982); *Choice Hotels Intl. v. Ocmulgee Fields*, 222 Ga. App. 185, 186-187 (1) (474 SE2d 56) (1996).

[15] *Choice Hotels Intl.*, supra at 187.

[16] See OCGA §§ 13-3-1; 13-3-2.

[17] *Southern Water Technologies v. Kile*, 224 Ga. App. 717, 719 (1) (481 SE2d 826) (1997).

[18] *Choice Hotels*, supra; *Andrews v. Skinner*, 158 Ga. App. 229, 230 (279 SE2d 523) (1981).

[19] *Andrews*, supra at 231.

sible to show how the Trust Agreement was to be funded, since that issue was ambiguous in the Trust Agreement and since the Slaughter memorandum does not add to, take from, or vary the terms of the Trust Agreement with respect to how the Trust Agreement was to be funded. However, the fact that parol evidence may be considered with respect to the Trust property does not mean it can be considered with respect to investment discretion, which is plainly and unambiguously set forth in the Trust Agreement. As stated previously, the Slaughter memorandum does add to, take from, and vary the terms of the Trust Agreement with respect to investment discretion. Thus, the trial court should not have considered the Slaughter memorandum with respect to investment discretion.

Since neither Georgia law nor the Trust Agreement imposed a duty to invest only in U. S. government issues, the Bank did not breach any fiduciary duty by failing to make such an investment. Furthermore, even if the Slaughter memorandum could be considered a contract, we cannot find that the estate tax liability resulted from the Bank's failure to invest in U. S. government issues. As we pointed out in Division 1, such an investment would not necessarily have avoided estate taxes. The Bank could have invested in short-term U. S. government issues, complying with Ali's alleged instructions, and the estate would still have had to pay estate taxes. The trial court erred in finding that the Bank breached its fiduciary and contractual duties as trustee. We therefore reverse the trial court's decision.

### Case No. A03A2199

The crux of this case is Namik's claim that the trial court erred in failing to award him a greater amount of damages.

3. In three separate enumerations of error Namik contends (1) the trial court erred in arbitrarily determining that the corpus should have been invested 50 percent in estate taxable investments and 50 percent in estate tax-exempt investments as there is absolutely no evidence that the corpus should or would have been invested in that manner, (2) the trial court erred in determining that Namik, as beneficiary, had a duty to mitigate damages resulting from the Bank's breaches of fiduciary duty and contract, and (3) the court abused its discretion in not awarding attorney fees and disgorgement of all, not half, of the trustee's fees and all, not half, of the costs. Based on our holding in Case No. A03A2198, these issues are moot.

4. Namik also contends, in a one-paragraph argument, that the trial court erred in determining that *Wachovia Bank of Ga. v. Reyn-*

*olds*[20] did not give rise to a cause of action in tort against the Bank for failing to follow Ali's instructions. However, as we found in Case No. A03A2198, the Bank did not have a duty to follow the statements in the interoffice memorandum prepared by an employee six months after the Trust Agreement was signed and depicting the employee's recollections of what investments Ali desired. This memorandum cannot be considered a contract between the Bank and Ali, and the memorandum varied the terms of the clear and unambiguous language in the Trust Agreement.

Moreover, contrary to Namik's assertion, *Reynolds* does not create a new tort cause of action imposing liability upon a bank for failing to follow any customer's instructions. *Reynolds* is factually distinguishable from this case. In *Reynolds*, the issue centered on who the "customer" was and to whom the bank owed a duty. Here, there is no dispute regarding the identity of the customer, and there is no dispute that the customer did not write the memorandum or in any other way alter the investment discretion provided for in the Trust Agreement. The trial court did not err in determining that *Reynolds* did not give rise to a cause of action in tort against the Bank.

*Judgment reversed in Case No. A03A2198. Judgment affirmed in Case No. A03A2199. Mikell, J., concurs. Eldridge, J., concurs in the judgment only.*

DECIDED DECEMBER 18, 2003 — RECONSIDERATION DENIED JANUARY 8, 2004 

*Powell, Goldstein, Frazer & Murphy, William J. Linkous, Jr., Nicole J. Wade, David G. Ross*, for appellant.

*Kaufman, Chaiken, Miller & Klorfein, Robert J. Kaufman, Stephen R. Klorfein, Charlotte K. Perrell, Jason S. Adler*, for appellees.

*Arnall, Golden & Gregory, Bertram L. Levy*, amicus curiae.

