A03A2198, A03A2199. WACHOVIA BANK OF GEORGIA, N.A.
v. NAMIK et al.; and vice versa.
(620 SE2d 470)

JOHNSON, Presiding Judge.

In these cases, we are asked to decide whether Wachovia Bank of Georgia breached its fiduciary duties as trustee by causing an estate to pay what the estate contends were unnecessary and avoidable estate taxes. Following a bench trial, the trial court found in favor of the Bank on counts alleging breach of fiduciary duty as administrator, self-dealing as trustee, stubborn litigiousness, tort, and punitive damages. The trial court found in favor of Issam Namik, Suzan Namik, Jinan Namik, Sundus Namik, and Hadia Mahmoud (collectively "Namik") on counts alleging breach of fiduciary duty as trustee for failure to avoid estate taxes and breach of fiduciary duty and breach of contract for failure to invest the trust funds in accordance with alleged instructions. The trial court awarded damages of $1,118,710 to Namik. In Case No. A03A2198, the Bank appeals the trial court's final order awarding damages to Namik. In Case No. A03A2199, Namik appeals the trial court's final order, contending he was entitled to greater damages.

In *Wachovia Bank of Ga. v. Namik,*[1] we concluded in Case No. A03A2198 that the trial court erred in finding the Bank liable for breach of fiduciary duty and breach of contract. The Supreme Court reversed this judgment in *Namik v. Wachovia Bank of Ga.*[2] We therefore vacate our judgment in Case No. A03A2198 and make the judgment of the Supreme Court of Georgia the judgment of this

[1] 265 Ga. App. 80 (593 SE2d 35) (2003).
[2] 279 Ga. 250 (612 SE2d 270) (2005).

Court. Given the reversal, we must now address the contentions alleged by Namik in Case No. A03A2199 in light of the Supreme Court's opinion.

*Case No. A03A2199*

The crux of this case is Namik's claim that the trial court erred in failing to award him a greater amount of damages. The facts of the case have been fully set out in our previous decision.

1. Namik contends the trial court erred in arbitrarily determining that the trust assets should have been invested 50 percent in estate taxable investments and 50 percent in estate tax exempt investments because there is absolutely no evidence that the trust assets should or would have been invested in that manner. The records show that although the trial court determined that the Bank should have known about the estate tax exemption available to nonresident alien customers and, therefore, breached its fiduciary duty in failing to invest the trust funds so as to avail the estate of that exemption, the court significantly reduced Namik's damages because it found that due to the Bank's concern over liquidity, only half of the funds would have been invested in government issues exceeding 183 days (estate tax exempt), with the remainder being invested in government issues of a shorter duration (subject to estate tax). Namik argues that this concern over liquidity is unsupported by law, fact, and practical economic reality. He further argues that the duration of a treasury bill has no relation to its liquidity and that there is no evidentiary basis for apportioning the investment as the trial court did in calculating damages. We disagree.

The trial court's order in this case adequately explains the reasoning and methodology for the court's award of damages. The trial court first held that the Bank did have a duty to consider the estate tax consequences of the trust fund investments. The only three investments that would have avoided estate taxes are passbook accounts, CDs, or treasury bills over 183 days. The court then concluded that, in accordance with the Slaughter memorandum, the trust funds should have been invested only in U. S. government issues, or treasury bills. Because the funds were not invested in treasury bills, the Bank was held liable for the differential between the actual investment income and the higher investment income that would have resulted from an investment in treasury bills.

With respect to damages for the estate tax, however, the trial court took into account two additional factors in considering whether the Bank's actions caused the alleged damages. First, the court determined that the Bank was legitimately concerned with maintaining the liquidity of the trust assets and guaranteeing the safety

of the principal, because the Bank could not have known that Ali (Namik's father) would die, and he could come back at any time and demand his money. Trial testimony supports this determination. Second, the trial court considered the fact that in 1989, the IRS had not yet issued its Technical Advice Memorandum clarifying that only investments in treasury bills over 183 days would be exempt from estate tax. Again, evidence in the record supports this fact. Based upon these two facts, the trial court held that, although the Bank had a duty to consider estate tax consequences of the investments, it cannot be held liable for failing to actually invest all of the trust funds to avoid estate taxes. We agree. Because of the Bank's lack of knowledge regarding Ali's return and because of the unclear IRS regulations, the Bank would have been justified in investing one-half of the trust funds in treasury bills over 183 days, which would have avoided estate taxes, and investing one-half of the trust funds in short-term treasury bills, which would not have avoided estate taxes. Therefore, the Bank's breach of duty was the proximate cause only of the estate taxes that were incurred for one-half of the trust funds.

The trial court's findings as to damages were further supported by evidence presented by the Bank's expert, who provided calculations via affidavit as to the exact amount of damages attributable to the Bank's failure to invest one-half of the trust funds in treasury bills over 183 days. Thus, the damages were not arbitrary, but instead were within the "range of testimony" presented at trial.[3] We find no error.

2. Namik next contends the trial court erred in determining that Namik, as beneficiary, had a duty to mitigate damages resulting from the Bank's breaches of fiduciary duty and contract. The trial court reduced Namik's damages based on (1) Namik's two-year delay between the time Namik learned of his father's death in July 1992 and the time he advised the Bank in August 1994, and (2) Namik's failure to follow the Bank's advice and probate Ali's estate in a timely manner, delaying the appointment of an administrator for Ali's estate until April 1996. According to Namik, the delays were not intentional acts designed to increase damages, and there is no evidence that Namik knew that any delays would have had any effect on taxes or interest thereon.

Notwithstanding these arguments, it is undisputed that Namik's delay in notifying the Bank of Ali's death and in probating Ali's estate caused additional damages that would not have been incurred otherwise. Specifically, among other damages, the estate incurred over

---

[3] See *C & S Nat. Bank v. Haskins*, 254 Ga. 131, 136-137 (2) (327 SE2d 192) (1985) ("Where the amount of a verdict is within the range of testimony it will not be disturbed on appeal.").

$500,000 in interest on overdue estate taxes. Damages, and the amount attributable to Namik's failure to mitigate those damages, were calculated with specificity by an expert and provided via testimony and affidavit.

(a) *Breach of Fiduciary Duty*. The trial court correctly ruled that Namik had a duty to mitigate damages arising from the Bank's breach of fiduciary duty. Georgia law allows a beneficiary to recover tort damages when a trustee commits a breach of fiduciary duty.[4] This Court has held unequivocally that an action for a breach of fiduciary duty lies in tort.[5] And in a Georgia tort action, parties are required to mitigate their damages; they are bound to reduce their damages "as far as is practicable by the use of ordinary care and diligence."[6] This is true even in a case alleging tortious breach of fiduciary duty.[7] If a plaintiff fails to exercise ordinary care, his damages are limited to those he would have suffered had damages been properly mitigated.[8]

The only exception to the duty to mitigate tort damages in Georgia is where "positive and continuous torts" occur.[9] However, contrary to Namik's argument, the Bank's breach of fiduciary duty in this case does not constitute a positive tort that would be exempt from the requirement that a plaintiff mitigate his damages. Georgia courts have defined three types of "positive and continuous torts": (1) fraud;[10] (2) ongoing violations of property rights;[11] and (3) intentional torts such as assault and battery.[12] Namik's claims against the Bank do not fall into any of these three categories.

Namik has cited no support for his claim that the Bank's actions constitute a "positive tort" merely because the Bank "acted positively." To the contrary, Georgia courts have held that a party is under a duty to mitigate damages even when harmed by reckless acts.[13] The

---

[4] See OCGA § 53-12-192 (a).

[5] See *Nelson & Hill, P.A. v. Wood*, 245 Ga. App. 60, 67-68 (3) (537 SE2d 670) (2000).

[6] See OCGA § 51-12-11.

[7] See *Kahn v. Columbus Mills*, 188 Ga. App. 90, 93 (3) (371 SE2d 908) (1988), rev'd on other grounds, *Columbus Mills v. Kahn*, 259 Ga. 80 (377 SE2d 153) (1989).

[8] See *Crowley v. Trust Co. Bank*, 219 Ga. App. 531, 532 (466 SE2d 24) (1995).

[9] OCGA § 51-12-11.

[10] See, e.g., *Haley v. Oaks Apts., Ltd.*, 173 Ga. App. 44, 45 (2) (325 SE2d 602) (1984) (physical precedent only).

[11] See, e.g., *Price v. High Shoals Mfg. Co.*, 132 Ga. 246, 250-251 (3) (64 SE 87) (1909).

[12] See, e.g., *Jeter v. Davis*, 33 Ga. App. 733, 737 (1) (127 SE 898) (1925).

[13] See *Central of Ga. R. Co. v. White*, 135 Ga. 524, 526 (69 SE 818) (1910) (no positive tort occurred when a train failed to stop and pick up a passenger who suffered harm in being stranded); *Western Union Telegraph Co. v. Truitt*, 5 Ga. App. 809, 811 (63 SE 934) (1909) (no positive tort occurred when a telegraph company incorrectly relayed the terms of a contract, causing harm to the plaintiff).

trial court did not err in reducing Namik's damages based upon his delay in notifying the bank of Ali's death and his delay in probating Ali's estate.

(b) *Breach of Contract*. The trial court correctly ruled that Namik had a duty to mitigate damages arising from the Bank's breach of contract. OCGA § 13-6-5 mandates that where a party is injured by a breach of contract, "he is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence." Where a plaintiff, "acting as prudent men ordinarily do" can avoid any increase in damages but fails to do so, "[s]uch consequences can hardly be the direct or natural consequence of the defendant's wrong, since it is at the plaintiff's option to suffer them."[14] In such cases, the plaintiff is not damaged by the defendant's act, but by his own negligence or indifference to consequences.[15]

Georgia courts have recognized three exceptions to the duty to mitigate damages in breach of contract actions: (1) fraud;[16] (2) breach of an express warranty;[17] and (3) an "absolute promise to pay."[18] None of these exceptions applies in this case. Contrary to Namik's contention, this case does not involve an "absolute promise to pay" that would exempt Namik from his requirement to mitigate damages. Unlike the absolute promise to pay cases cited by Namik, here the Bank made no absolute promise to pay a specified amount. Moreover, in this case, unlike the cases cited by Namik, Namik's failure to mitigate damages increased the amount of damages. The trial court properly awarded only those damages that were not caused by Namik's delay in notification and in probating the estate.

3. Namik maintains the trial court abused its discretion in not awarding attorney fees and disgorgement of all, not half, of the trustee fees and all, not half, of the costs. We find no abuse of discretion.

(a) *Disgorgement of Fees*. Although Namik's enumeration of error refers to the trial court's award of trustee fees and costs, Namik has not provided any argument or citation of authority to support his position that the court erred in requiring disgorgement of one-half of the trustee fees and costs. An argument which merely restates or

---

[14] *Nicholas v. Tanner*, 117 Ga. 223, 228 (43 SE 489) (1903).

[15] Id.

[16] See, e.g., *Haley*, supra.

[17] Id. at 45-46.

[18] See, e.g., *J. C. Penney Cas. Ins. Co. v. Woodard*, 190 Ga. App. 727, 728-729 (1) (380 SE2d 282) (1989).

rephrases an enumeration of error is insufficient to present an issue for appellate review.[19] Thus, this enumeration of error is deemed abandoned.[20]

Notwithstanding the fact that Namik has abandoned this argument, we have reviewed Namik's argument and find that it lacks merit. The argument regarding disgorgement of the fees relates to Namik's first argument regarding the trial court's award of damages. According to Namik, the trial court erred in determining that half of the trust funds would have been invested in taxable investments, and therefore erred in only awarding him half his fees and costs. Based on our holding in Division 1, we find that the trial court properly exercised its discretion in awarding Namik half his trustee fees and costs.

The trial court determined that Namik was only entitled to one-half of his trustee fees and costs because the Bank's breach of duty was not intentional and was related to only one-half of the trust property. The Supreme Court of Georgia has held that "[i]f a breach of trust is found to have occurred, the court may award full compensation, or reduce it to any level including no compensation."[21] The trial court properly exercised its discretion in finding that disgorgement of half of the fees and costs was appropriate.

(b) *Attorney Fees.* The issue of whether attorney fees should be awarded based upon the other party's bad faith is a question for the factfinder to be determined from consideration of the facts and circumstances in the case.[22] We review the trial court's denial of attorney fees under an abuse of discretion standard.[23] Contrary to Namik's argument, the trial court did not "have" to award attorney fees after finding a breach of fiduciary duty.

"Bad faith is not simply bad judgment or negligence, but it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will."[24] Here, the trial court found that the Bank "did not act in bad faith, was not stubbornly litigious, and did not cause Plaintiffs unnecessary trouble and expense." We agree that the evidence does not *demand* a finding of bad faith on the part

---

[19] See *Vaughn v. Metro. Property &c. Ins. Co.*, 260 Ga. App. 573, 576 (5) (580 SE2d 323) (2003).

[20] Court of Appeals Rule 25 (c) (2).

[21] *C & S Nat. Bank*, supra at 143 (10); see also OCGA § 53-12-192 (a) (7).

[22] See *Multimedia Technologies v. Wilding*, 262 Ga. App. 576, 581-582 (6) (b) (586 SE2d 74) (2003); *Jennings Enterprises v. Carte*, 224 Ga. App. 538, 541 (5) (481 SE2d 541) (1997).

[23] *East Beach Properties v. Taylor*, 250 Ga. App. 798, 805-806 (8) (552 SE2d 103) (2001).

[24] (Citations and punctuation omitted.) *Jennings Enterprises*, supra.

of the Bank. The trial court did not abuse its discretion in refusing to award Namik attorney fees.[25]

Namik argues that the trial court only considered OCGA § 13-6-11, and not OCGA § 53-12-193 (a) (4), in deciding whether to award attorney fees. We disagree. There is no indication in the record that the trial court did not consider OCGA § 53-12-193. And, that Code section does not require a court to award — or even consider awarding — attorney fees upon a finding of breach of fiduciary duty. It merely allows such an award. Moreover, contrary to Namik's contention, findings of fact are required only when a trial court grants an award of attorney fees.[26] We find no error.

4. Namik also contends, in a one-paragraph argument, that the trial court erred in determining that *Wachovia Bank of Ga. v. Reynolds*[27] did not give rise to a cause of action in tort against the Bank for failing to follow Ali's instructions. However, contrary to Namik's assertion, *Reynolds* does not create a new tort cause of action imposing liability upon a bank for failing to follow a customer's instructions. *Reynolds* is factually distinguishable from this case. In *Reynolds*, the issue centered on who the "customer" was and to whom the bank owed a duty. There is absolutely no indication that the Court was creating a new cause of action. The trial court did not err in determining that *Reynolds* did not give rise to a cause of action in tort against the Bank.

*Judgments affirmed in Case Nos. A03A2198 and A03A2199. Mikell and Bernes, JJ., concur.*

DECIDED AUGUST 25, 2005.

*Powell Goldstein, William J. Linkous, Jr., Nicole J. Wade, David G. Ross*, for appellant.

*Kaufman, Miller & Sivertsen, Robert J. Kaufman, Jason S. Adler, Chaiken & Klorfein, Stephen R. Klorfein, Perrell & Wright, Charlotte K. Perrell*, for appellees.

*Arnall, Golden & Gregory, Bertram L. Levy*, amicus curiae.

---

[25] See *Multimedia Technologies*, supra (affirming jury's refusal to award attorney fees despite the finding of breach of fiduciary duty and conversion).

[26] See *Bellah v. Peterson*, 259 Ga. App. 182, 183 (2) (576 SE2d 585) (2003).

[27] 244 Ga. App. 1 (533 SE2d 743) (2000).