Frank L. MABRY; Ann M. Seltzer; Opal Ponvert, f/k/a Opal Mabry; the Jenkins Family Trust; Marion Edmund Jenkins and Louise Marcella Jenkins, Trustees; Marion E. Jenkins; and Louise M. Jenkins, Plaintiffs–Appellees and Cross–Appellants,

v.

TOM STANGER CO., a Colorado corporation, Defendant–Appellant and Cross–Appellee.

No. 99CA1778.

Colorado Court of Appeals, Div. III.

March 1, 2001.

Rehearing Denied April 5, 2001.

Certiorari Denied Nov. 13, 2001.

Ted C. Wright, Durango, CO; David P. Smith, Durango, CO, for Plaintiffs–Appellees and Cross–Appellants.

McDaniel, Baty, Miller & Robbins, LLC, G.R. Miller, Denise Sague Robbins, Durango, CO, for Defendant–Appellant and Cross–Appellee.

Rothgerber Johnson & Lyons LLP, Richard K. Clark, Laura C. Peterson, Denver, CO, for Amicus Curiae Colorado Association of Realtors.

Opinion by Judge KAPELKE.

In this action arising from a failed real estate purchase transaction, defendant, Tom Stanger & Co. (Broker), appeals from the trial court's judgment dismissing, on breach of fiduciary duty grounds, its counterclaim for a brokerage commission. By cross-appeal, plaintiffs, Frank L. Mabry; Ann M. Seltzer (now Ann M. Barnes); Opal Ponvert, formerly Opal Mabry; the Jenkins Family Trust; Marion Edmund Jenkins; and Louise Marcella Jenkins, Trustees; Marion E. Jenkins; and Louise M. Jenkins (Sellers), challenge certain of the trial court's rulings and findings. We affirm.

In 1993, Sellers renewed exclusive listing agreements they had with Broker for the sale of their property (the property). Because Sellers had separate interests in the property, Broker prepared two listing contracts: one between Broker and Mabry, Barnes, and Ponvert (Absent Sellers), for the term of February 1, 1993, to February 1, 1994; and the other between Broker and the other Sellers (the Jenkins) for the term February 21, 1993, to February 21, 1994.

. Sellers all agreed that the property was to be marketed as a single parcel with a total sale price of $3.5 million.

After the listing agreements were signed, Broker received several offers for purchase of the property. Broker did not deliver all of the offers to Sellers; some were delivered only to the Jenkins' attorney.

On February 17, 1994, Borrasca Land and Development Company (Buyer) delivered to Broker a full price offer for the property. By its terms, the offer would expire unless accepted on or before February 21, 1994. Broker sent the offer to the Absent Sellers by express mail and also delivered a copy to the Jenkins' attorney.

Broker then contacted the Absent Sellers about the offer and asserted an entitlement to a commission under the terms of the listing agreement, regardless of whether or not Sellers accepted the offer. The Absent Sellers agreed to accept the offer with minor changes.

Broker then told the Jenkins that the Absent Sellers had accepted the offer, and again asserted entitlement to a commission under the terms of the exclusive listing contract regardless of whether Sellers accepted. The Jenkins' attorney prepared a counterproposal to Buyer's offer.

Thereafter, Broker sought advice from its attorney as to its right to a commission and as to whether the counterproposal by the Jenkins presented a conflict of interest. The Broker's attorney sent a letter to Sellers about the possible need to have the Absent Sellers consent to any counterproposals, again asserting that Broker had already earned its commission upon presentation of the original offer.

Broker also submitted to the Absent Sellers a document in which it acknowledged the Jenkins' desire to make a counterproposal and agreed to submit the counterproposal as an "accommodation" to the Jenkins, but asked the Absent Sellers to agree to be bound by the original offer if the counterproposal were not accepted by Buyer.

The Jenkins' attorney ultimately prepared two counterproposals, the second of which was accepted by all parties (sale contract).

When it later became evident that delays would prevent a closing of the sale on the date specified in the sale contract, all parties agreed to extend the closing date.

In January 1995, Sellers acknowledged to Buyer that they would not be able to complete necessary negotiations with the city of Durango regarding a subdivision application in time to meet the extended closing date. The parties attempted further negotiation, but failed to agree on any additional extension of the sale contract.

After the sale contract terminated, Sellers notified Buyer that they were ready to perform. Buyer did not respond but instead recorded a notice of claim of interest in the property.

Sellers then brought this action, seeking declaratory and quiet title relief and asserting breach of contract and slander of title claims against Buyer, as well as breach of contract and breach of fiduciary duty claims against Broker. Broker filed a counterclaim against Sellers for its commission, and Buyer asserted a counterclaim against Sellers for specific performance and breach of contract.

Buyer later stipulated to have title to the property quieted in favor of Sellers and withdrew its claim for specific performance.

Following a bench trial, the court awarded Buyer damages based on a finding that Sellers' conduct amounted to anticipatory repudiation of their contract with Buyer. The court also found that Broker had breached its fiduciary duties to Sellers and, therefore, was not entitled to a commission. However, the court ruled in favor of Broker on Sellers' claim for damages, finding that Sellers had not proven they had suffered any actual damages as a result of the breaches of fiduciary duty.

## I.

Broker contends that the trial court erred in finding it had breached its fiduciary duties to Sellers. We disagree.

 A real estate broker operating under an exclusive listing contract with a seller of property stands in a fiduciary relationship to the principal. *Stortroen v. Beneficial Finance Co.*, 736 P.2d 391 (Colo.1987).

Thus, a broker for the seller has a fiduciary duty to act with utmost good faith, loyalty, and fidelity in all dealings with the seller. Section 12–61–804(1)(c), C.R.S.2000; *Moore & Co. v. T–A–L–L, Inc.*, 792 P.2d 794 (Colo. 1990). In addition, the broker owes a separate duty to exercise reasonable skill and care. Section 12–61–804(1)(b), C.R.S.2000; *Martinez v. Badis*, 842 P.2d 245 (Colo.1992).

A broker for the seller also has a fiduciary duty to inform the seller of any facts that may reasonably affect the seller's decision. *Wheeler v. Carl Rabe, Inc.*, 198 Colo. 311, 599 P.2d 902 (1979); *see* §§ 12–61–804(c)(III) and 12–61–804(c)(IV), C.R.S.2000.

■ Significantly, a real estate broker's breach of a fiduciary duty to a seller results in a forfeiture of the broker's entitlement to a commission, even if the seller has not suffered any demonstrable harm as a result of the breach and even if the breach does not amount to fraud or self-dealing or result in a profit to the broker. *Moore & Co. v. T–A–L–L, Inc., supra.*

Here, the trial court found that Broker had breached both its duty of loyalty and its duty to exercise skill and care.

### A.

■ Broker argues that, as a matter of law, a breach of the duty to exercise skill and care does not result in a forfeiture of commission but, instead, merely allows the broker's principal to offset any damages against the broker's claim for a commission. However, because we conclude that the record here supports the trial court's finding of Broker's breach of the duty of *loyalty*, we need not address that argument.

The court's finding of breach of duty of loyalty is supported by the evidence that Broker pressured Sellers to accept Buyer's offer of February 17, 1994, at a time when one of the listings had already expired. Thus, as the trial court found, Broker had "played one seller against the others" by telling the Absent Sellers that they needed to accept the sale proposal because Broker had already earned its commission, and then using the Absent Sellers' acceptance to pressure the Jenkins to sign.

Further, in communicating with Sellers, Broker insisted that the offer substantially complied with the terms of the listing agreements but failed to point out that its listing agreement with the Absent Sellers had already expired at the time the offer was received. Also, the Absent Sellers did not receive the offer from the Broker until Saturday, February 18, 1994, three days before the date the offer was to expire.

In a letter to the Jenkins' attorney dated February 22, 1994, Broker's attorney indicated that the counterproposal could be forwarded to Buyer as an accommodation to the Jenkins, but only on the basis that the presentation of the counterproposal, if it were not accepted by Buyer, would have no effect upon the original offer. The letter also contained an assertion that a "commission has been earned and will be collected either through a closing or litigation."

Two of the Absent Sellers testified that the Broker's action placed them under considerable stress because they were being threatened with a claim for a commission whether or not they accepted the offer and because they did not know how they would be able to pay the commission without a sale. One of the Absent Sellers described the situation Broker placed her in as "frightening."

In addition to finding that Broker had pressured the Sellers, the trial court found, with record support, that Broker had failed to convey all offers on the property to the Absent Sellers.

Relying on *McGill Corp. v. Werner*, 631 P.2d 1178 (Colo.App.1981), Broker argues that its conduct did not constitute a breach of its fiduciary duty of loyalty.

In *McGill*, a real estate broker brought an action for a commission under an exclusive listing agreement. The broker had received an offer in the amount requested by the two sellers in their listing contract and had presented it to the individual sellers. The first seller accepted. The second seller said she wanted to consider the offer further. She did not accept the offer before it expired. On the day the offer was to expire, the broker wrote a letter to the second seller

that included a statement by the broker that, regardless of that seller's acceptance or denial of the offer, she would be obligated to pay the broker's commission.

On appeal, a division of this court in *McGill* rejected the second seller's contention that the broker had breached its fiduciary duty by claiming a commission and consulting its attorney.

We find this case distinguishable from *McGill.* Here, it was not Broker's assertion of a claim to a commission alone that constituted its breach of the duty of loyalty. As noted, the trial court also found that Broker had improperly pressured the Sellers and had failed to disclose material information, such as the receipt of other offers and the fact that one of the listing agreements had already expired.

The record thus supports the court's finding that Broker had breached its duty of loyalty.

### B.

■ Broker also argues that the trial court's ruling is erroneous because, upon expiration of the listing agreements, it became a transaction broker, rather than a seller's agent, and, as such, no longer had fiduciary duties. In this regard, Broker challenges the trial court's finding that Broker had abandoned any attempt to represent Sellers. We find no basis for reversal.

First, the evidence reveals that at least one of the listing agreements was, by its express terms, still in effect at the time of Broker's breach of fiduciary duty. Also, as the trial court found, Broker's fiduciary duties to Sellers did not terminate on the expiration date set forth in the listing agreements, but, instead, continued until performance or completion of the agreement by which the Broker was engaged. *See* § 12–61–809(1)(a), C.R.S.2000.

Further, both of the listing agreements contained provisions for a commission to be paid to Broker during a holdover period if the property were sold within a stated period after the expiration date. The record reveals that the improper pressuring of Sellers by

Broker occurred within such a holdover period.

Finally, Broker's claim for a commission is based on the terms of the very agreements it now asserts had already expired, and it failed even to notify Sellers of the expiration. Instead, as the trial court found, Broker thereafter pressured them to enter into the sale contract through threats of a claim for commission.

Under these circumstances, the trial court properly rejected Broker's contention that it owed Sellers no duty of loyalty.

### II.

■ Broker next contends that it is entitled to recover its commission because any breach of duty was ratified by Sellers through their conduct in signing a contract of sale with Buyer, maintaining an action on that contract at trial, and retaining earnest money from Buyer with full knowledge of Broker's alleged breaches. We perceive no basis for reversal.

In asserting this argument, Broker points to the trial court's finding that any misconduct had been ratified by Sellers. The court made that finding in connection with its determination that Sellers had breached their sales contract with Buyer. However, in denying a motion to alter or amend the judgment, the court specifically rejected Broker's contention that such a ratification would excuse Broker's breaches of fiduciary duty and allow it to recover a commission. The court held that *Moore & Co. v. T–A–L–L, Inc., supra,* was controlling.

Broker relies on *Philips Industries, Inc. v. Mathews, Inc.,* 711 P.2d 704 (Colo.App.1985). There, a division of this court recognized that if an unauthorized sale is ratified by the principal, the sale is given effect as if originally authorized, and the agent is entitled to recover its commission. *See also* Restatement (Second) of Agency § 462 (1958).

Here, however, as Sellers point out in their brief on cross-appeal, the breach of fiduciary duty by Broker did not consist of entering into an unauthorized transaction that was later ratified. Instead, Broker's breaches took the form of pressuring Sellers in its own

self-interest and failing to disclose material information. We agree with Sellers that the record would not support a finding that this conduct was ratified by Sellers and that the situation here is thus distinguishable from that in *Philips Industries, Inc. v. Mathews, Inc., supra.*

As the supreme court stressed in *Moore & Co. v. T–A–L–L, Inc., supra,* 792 P.2d at 799, "it has long been the law in this state that the broker's concealment from the principal of information that bears upon the transaction in question will defeat the broker's claim for compensation."

Thus, under the circumstances here, we find no error in the trial court's ruling. In light of our holding, we need not separately address the issues raised in Sellers' cross-appeal.

The judgment is affirmed.

NEY and DAILEY, JJ., concur.