**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RONALD L. SIMEK,

      Plaintiff - Appellant,

v.

J.P. KING AUCTION COMPANY,

      Defendant - Appellee.

No. 04-8109

(D. Wyoming)

(D.C. No. 03-CV-198-CAB)

---

**ORDER AND JUDGMENT** [*]

---

Before **TACHA** , Chief Judge, **ANDERSON** and **KELLY** , Circuit Judges.

---

Mr. Simek appeals the district court's denial of his motion for a new trial after a jury held that when J.P. King Auction Co. auctioned off Mr. Simek's Wyoming property for less than Mr. Simek thought it was worth, it did so in violation of Wyoming real estate statutes and in breach of its fiduciary duty to

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Mr. Simek, but that Mr. Simek incurred zero damages. Mr. Simek asserts five [1] grounds for error, each of which we address below. For the reasons stated, we affirm.

**BACKGROUND**

Mr. Simek, a successful businessman and original cofounder of Tombstone Pizza, first came into contact with J.P. King's Executive Vice-President, Scott King, in October 2000 when Mr. Simek inquired about auctioning a property he owns in Nevada. At that time, Mr. Simek decided not to go forward with the auction. He contacted Scott King again in July 2002, this time concerning the auction of Mr. Simek's custom-built log residence located on twenty acres of riverfront property in the vicinity of Cody, Wyoming. In August 2002, Mr. Simek and J.P. King entered into an Auction Marketing Agreement in regard to the Wyoming property.

Under the terms of the Agreement, the auction of Mr. Simek's property would be conducted as an absolute auction, which requires the sale of the property "to the highest bidder(s) . . . regardless of price," rather than a reserve auction, which allows a seller to reserve the right not to sell if the final bid does

---

[1]Mr. Simek also alleged breach of contract, negligence, and negligent misrepresentation in his complaint but abandoned these claims before trial.

not exceed a certain amount. Agreement, Appellant's App. Vol. III at 467. Scott King and J.P. King's marketing materials had strongly recommended the absolute form of auction as the best method of obtaining the highest possible price for the property. After reviewing the Agreement, Mr. Simek's attorney had questioned the use of the absolute auction method, but Mr. Simek agreed to proceed with that method.

The Agreement also provided that Mr. Simek would pay J.P. King $108,396.43 in advance for promotional and administrative expenses, and that, "[s]hould any items ultimately be more or less than the budget agreed upon, neither [Mr. Simek] nor [J.P.] K[ing] shall be entitled to a reimbursement." Id. at 466-67. At the close of the sale of the property, Mr. Simek would also pay J.P. King ten percent of the total purchase price.

At the time this Agreement was negotiated and signed, a number of individuals at J.P. King had obtained Wyoming real estate licenses. However, Scott King, the person at J.P. King with whom Mr. Simek had the most extensive contact, did not have a Wyoming license, in violation of Wyo. Stat. Ann. § 33-28-101, although he obtained a license on October 1, 2002. In addition, J.P. King failed to obtain Mr. Simek's signature on a written disclosure of applicable brokerage relationships that J.P. King was required to prepare under Wyo. Stat. Ann. § 33-28-306.

The auction of Mr. Simek's property took place on October 26, 2002. J.P. King had imposed a $50,000 bid deposit requirement on qualified bidders. Six qualified bidders were present at the auction. One of the six, Phil Spano, was previously known to J.P. King, and J.P. King had waived the $50,000 bid deposit for him and also arranged for him to bid by telephone. Another of the bidders, Northeastern LLC, was an entity that Mr. Simek's attorneys had created specifically to protect Mr. Simek's interests at the auction.

Northeastern submitted an opening bid of $800,000. After the bidding went back and forth twice between Northeastern and Mr. Spano, Mr. Spano bought the property with a winning bid of $1,050,000. Including a buyer's premium, the sale price for the property was $1,155,000. This amount was less than Mr. Simek's mortgage on the property of $1,256,027.27, and was a disappointment to Mr. Simek, who believed the property was worth at least $3 million.

On September 26, 2003, approximately a year after the auction, Mr. Simek filed this diversity suit against J.P. King in Wyoming federal court. The complaint alleged, in relevant part, that, by failing to apprise Mr. Simek of the risks of absolute auction and failing to promote the auction of Mr. Simek's property appropriately, among other things, J.P. King had breached the covenant of good faith and fair dealing as well as its fiduciary duty as Mr. Simek's real estate broker. As a result of these alleged violations, Mr. Simek sought

compensatory, consequential, and punitive damages. The complaint also alleged that J.P. King had acted in violation of the Wyoming Real Estate License Act, Wyo. Stat. Ann. §§ 33-28-101 to -401. [2] In regard to this claim, the complaint indicated that, "[a]s a result of [J.P. King]'s actions . . . , [Mr. Simek] ha[d] sustained significant losses and will continue to incur additional damages until this matter is resolved." Complaint, Appellant's App. Vol. I at 24.

The case was tried to a jury over nine days. Mr. Simek testified to his belief that his property was worth $3 million. He also presented an expert witness's appraisal of the property at $2.2 million. He further introduced witness testimony indicating that the absolute auction process had come under increasing scrutiny and that it was important for an auctioneer to make clients aware of the risks. Mr. Simek also presented an expert witness at trial to assess the "total amount received by J.P. King" as a result of its entering into the Auction Marketing Agreement with Mr. Simek. Trial Tr., Appellee's Supp. App. Vol. I at 333. The expert testified that this amount was approximately $135,712, in addition to the $108,396.43 promotional fee.

---

[2]The complaint referred specifically to Wyo. Stat. Ann. § 33-28-303, which lists the duties and obligations of a seller's agent to a seller. Among other things, the provision obligates an agent "[t]o comply with all requirements of th[e Real Estate License Act]." Wyo. Stat. Ann. § 33-28-303(a)(iv).

Over Mr. Simek's objection, J.P. King introduced into evidence the 2002 county tax assessment of Mr. Simek's property which indicated its value was approximately $1.5 million. J.P. King also elicited testimony from Scott King and another individual engaged in auctions, again over Mr. Simek's objection, in regard to the relationship between appraisers' and tax assessors' property valuations and the price that one might expect a property to be sold for at auction.

Following the close of evidence, Mr. Simek raised a number of objections in regard to the court's proposed jury instructions, primarily arguing that the court was improperly including negligence principles—such as proximate causation and the duty to mitigate—in its instructions on damages for breach of fiduciary duty. The district court overruled these objections, holding that the concepts of causation and mitigation were common to all damages claims.

On August 27, 2004, the jury returned a verdict finding that J.P. King had breached its fiduciary duty to Mr. Simek and had violated Wyoming real estate laws but had not breached the implied covenant of good faith and fair dealing. The jury further found that the fair market value of Mr. Simek's Cody property on the date of the auction was $1,050,000. The jury concluded that Mr. Simek had not sustained any damages as a result of J.P. King's illegal conduct and that there were no damages that Mr. Simek could have "avoided or reduced by reasonable care and diligence without exposing him to undue risk, burden, or humiliation."

Verdict, Appellant's App. Vol. II at 196. In addition, it found that J.P. King did not "receive any money either as a fee, commission, compensation or profit by or in consequence of" its violation of Wyoming real estate laws. Id. at 197.

Following the verdict, Mr. Simek moved the trial court to award him the statutory penalty available pursuant to Wyo. Stat. Ann. § 33-28-114, based on the jury's finding that J.P. King had violated Wyoming real estate laws. The court denied this motion. Mr. Simek further moved the court for a new trial on the issue of damages, or alternatively, for an additur. In support of this motion, Mr. Simek argued that the jury's finding regarding his property's fair market value was unsupported by the evidence because J.P. King "did not call any expert witnesses on the question of value," and thus the only evidence of value was that provided by Mr. Simek. Plaintiff's Mot. for New Trial, Appellant's App. Vol. II at 261. The district court denied this motion as well, reasoning that "there was sufficient evidence for the jury to determine that the market value of [Mr. Simek]'s home was the price obtained through the auction process." Order of Sept. 28, 2004, Appellant's App. Vol. II at 281. Mr. Simek appealed the jury's verdict and the district court's orders denying his motions for award of statutory fees and for a new trial or additur.

## DISCUSSION

On appeal, Mr. Simek argues that the district court erred by (1) refusing to award Mr. Simek a statutory penalty pursuant to Wyo. Stat. Ann. § 33-28-114; (2) instructing the jury on issues of causation and mitigation; (3) allowing J.P. King to present evidence of Mr. Simek's net worth; (4) allowing J.P. King to introduce the county assessor's valuation of Mr. Simek's property into evidence and to elicit nonexpert witnesses' opinions on valuation; and (5) denying Mr. Simek's motion for a new trial on damages. [3] We consider each issue in turn.

## I. STATUTORY PENALTY UNDER WYO. STAT. ANN. § 33-28-114

Mr. Simek first argues that he was entitled to receive an amount three times the sum of money that J.P. King received as a result of their Agreement as a statutory penalty pursuant to Wyo. Stat. Ann. § 33-28-114. According to Mr. Simek, the district court, in denying his motion for an award of this amount, "incorrectly treated the statutory penalty as a measure of damages to be awarded by the jury rather than a statutory penalty to be awarded by the Court." Appellant's Opening Br. at 26. Mr. Simek further contends that the district court erred in "requiring proof of causation" as a prerequisite to awarding the statutory penalty. Id. In Mr. Simek's view, the award of treble damages pursuant to Wyo.

---

[3]Mr. Simek raised two additional arguments in his brief regarding the district court's refusal to give a constructive fraud instruction and its failure to excuse jurors. Both of these arguments were abandoned at oral argument.

Stat. Ann. § 33-28-114 is mandatory once a violation of Wyoming real estate law has been established.

The appropriate interpretation and application of § 33-28-114(b) are issues of Wyoming law. We review de novo the district court's evaluation of these questions. Burton v. R.J. Reynolds Tobacco Co., 397 F.3d 906, 910 (10th Cir. 2005) ("We review a district court's interpretation of state law de novo."). The provision states, in relevant part:

> If any person receives any money or the equivalent thereof as a fee, commission, compensation or profit by or in consequence of a violation of any provision of [the Wyoming Real Estate License Act], he shall . . . be liable to a penalty of not less than the amount of the sum of money so received and not more than three (3) times the sum so received as may be determined by the court, which penalty may be recovered in a court of competent jurisdiction by any person aggrieved.

Wyo. Stat. Ann. § 33-28-114(b).

Under Wyoming law, the award of a statutory penalty pursuant to § 33-28-114(b) is equivalent to an award of punitive damages and is therefore a matter within the discretion of the trial court. Cates v. Daniels, 628 P.2d 862, 867-68 (Wyo. 1981) ("The award of . . . punitive damages [pursuant to Wyo. Stat. Ann. § 33-28-114(b)] is solely in the discretion of the trial court."). In Cates, the Wyoming Supreme Court thus held that the district court did not abuse its discretion when it refused to award treble damages under § 33-28-114(b) even though the defendants had violated Wyoming real estate laws. Id. at 868. The

Wyoming Supreme Court has further held that such an award does require a "causal connection between" a defendant's violation and "the profit [or other gain] realized by" the defendant. McCoy v. Thompson, 677 P.2d 839, 843 (Wyo. 1984). Moreover, it appears that it is not error for the jury, rather than the court, to make at least a preliminary determination regarding the statutory penalty as long as this determination is supported by the evidence. See Erickson v. Magill, 713 P.2d 1182, 1187 (Wyo. 1986) (upholding a district court's reversal of a jury's award of a penalty under § 33-28-114(b) to the plaintiff where the court determined there was no violation of Wyoming real estate laws).

Here, as indicated above, the jury found that J.P. King did not "receive any money either as a fee, commission, compensation or profit by or in consequence of" its violation of Wyoming real estate laws and did not award Mr. Simek any damages. Verdict, Appellant's App. Vol. II at 197. In denying Mr. Simek's subsequent motion for an award of the statutory penalty, the court reasoned that "the jury considered the statutory penalty" but had "appropriately" assessed the amount of damages at zero based on its determination that J.P. King's statutory violations "were not the proximate cause of any damages." Order of Sept. 21, 2004, Appellant's App. Vol. II at 280.

Mr. Simek appears to contend that the district court, in reaching this conclusion, misunderstood the penalty determination under § 33-28-114(b) as

connected to the amount of damages Mr. Simek sustained that were "proximate[ly] cause[d]" by J.P. King's violations. It is true that the "causal connection" required under Wyoming law appears more like "but for" causation than "proximate" causation, [4] see McCoy, 677 P.2d at 843, and the statute requires the connection to be between the violation and the money received by the defendant, not between the violation and the damages sustained by the plaintiff. However, even if the district court's order appeared to rely on an incorrect interpretation of Wyoming law in regard to these matters, the jury instructions and verdict form do not reflect the same error. In answering the question on the verdict form regarding whether J.P. King "receive[d] any money . . . by or in consequence of" its real estate law violations, the jury had before it the very language of the statute. The applicable jury instruction indicated that "if you find that J.P. King received money . . . as a consequence of a violation of any provision of the Wyoming Real Estate License Law, J.P. King may be liable for not less than the amount of money so received and not more than three times the amount of money so received." Instr. No. 34, Appellant's App. Vol. II at 241. The jury found that J.P. King received no money as a consequence of its statutory violations. Given that finding, there was no basis upon which the court could

---

[4]See Restatement (Third) of Torts § 26 (proposed final draft) (distinguishing "but for" or "factual" causation from "proximate" causation for purposes of negligence liability).

have awarded Mr. Simek a statutory penalty of "not less than the amount of the sum of money so received and not more than three (3) times the sum so received," as allowed under § 33-28-114(b).

On appeal, Mr. Simek does not argue that there is no basis in the record for the jury to find no causal connection, nor does he attempt to explain the causal connection between specific statutory violations committed by J.P. King and its receipt of money. Essentially, Mr. Simek argues that, as a matter of law, all money received by J.P. King as a result of the auction of Mr. Simek's property was received "by or in consequence" of J.P. King's statutory violations. We see no basis for such a conclusion unless the Agreement between Mr. Simek and J.P. King was itself rendered invalid by these violations. Having carefully reviewed the record, we are unpersuaded that any of the violations alleged by Mr. Simek were sufficient to render the Agreement invalid. The only alleged violation that might have invalidated the Agreement at the outset was Scott King's failure to have a Wyoming real estate license during his negotiations with Mr. Simek. However, although Scott King did not have a license at that time, other individuals at J.P. King did have licenses. Moreover, Scott King did have a valid license as of October 1, 2002, before the auction date of October 26. While the Real Estate License Act states that an unlicensed broker may not bring suit to recover a commission, Wyo. Stat. Ann. § 33-28-115, the Wyoming Supreme Court

has observed that generally, in the absence of some further violation, "one who has paid money to an unlicensed person for performance of a contract is not entitled to recover the money back," in part because "there is no equitable reason for making restitution to a plaintiff who gets what he expected, and the parties to an illegal contract which has become executed cannot in equity and principles of restitution require that money be paid back."  Bowlerama, Inc. v. Woodside Realty Co._, 752 P.2d 1377, 1383-84 (Wyo. 1988).  We therefore affirm the district court's order denying the statutory penalty.

## II.    JURY INSTRUCTIONS

Mr. Simek next argues that the district court gave erroneous jury instructions in regard to the standard for awarding damages based on a breach of fiduciary duty.  "We review _de novo_ whether, as a whole, the district court's jury instructions correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards."  Grace United Methodist Church v. City of Cheyenne_, 427 F.3d 775, 793 (10th Cir. 2005).  Even if, after reviewing the instructions in isolation from the rest of the trial, we are left with a substantial doubt in regard to whether the jury received proper guidance, we may reverse a jury's verdict in a civil trial only if we conclude the

-13-

erroneous instructions prejudiced the losing party. Id. (citing Morrison Knudsen Corp. v. Fireman's Fund Ins. Co., 175 F.3d 1221, 1236 (10th Cir. 1999)).

Mr. Simek contends that, although his damages claims were based on breach of fiduciary duty rather than negligence, "the District Court repeatedly included ordinary negligence concepts in the jury instructions and verdict form" and that, "[a]s a result, the jury was misled on the law applicable to the breach of fiduciary duty claims against J.P. King." Appellant's Opening Br. at 31. Mr. Simek further claims that the district court erroneously instructed the jury to apply the affirmative defense of mitigation even though, he alleges, that defense is not available for a breach of fiduciary duty, as opposed to negligence, claim. The result of these errors, according to Mr. Simek, is that the jury focused on the question of "actual damages and did not properly address the equitable relief of forfeiture," which would have required disgorgement by J.P. King of all sums paid to it by Mr. Simek. Id. at 35.

In regard to the causation issue, Mr. Simek objected at trial to Instruction No. 14, which stated:

> An injury or damage is caused by an act, or a failure to act, whenever it appears from a preponderance of the evidence that the act or omission played a substantial part in bringing about the injury or damage.
>
> Conduct which plays a substantial part in bringing about the injury or damage is that conduct which directly brings about the injury either immediately or through happenings which follow one

after another.  If, however, the conduct created only a condition or occasion for the harm to occur then it would not be a substantial factor in bringing about the harm.

Jury Instr. No. 14, Appellant's App. Vol. II at 216.  The district court denied this objection, indicating its belief that general damages law applied, and that damages require causation.

Mr. Simek also objected to the court's proposed instruction on mitigation of damages, which stated:

If you find that [Mr. Simek] is entitled to recover damages, then you should reduce the amount of damages that you award to [Mr. Simek] by the amount of damages that [he] could have avoided or reduced by reasonable care and diligence without exposing him to undue risk, burden, or humiliation.

Instr. No. 35, Appellant's App. Vol. II at 242.  Mr. Simek objected to this instruction on the basis that J.P. King had failed to demonstrate mitigation was an affirmative defense for breach of fiduciary duty claims in Wyoming law.  The district court responded that, in its view, as a general tort principle, Mr. Simek "had a duty to mitigate, if he could."  Jury Instr. Conf., Appellant's App. Vol. III at 430.  Both of these instructions were given to the jury.

Under the circumstances here, we are unpersuaded that the district court's instructions constituted reversible error.  For one thing, it is undisputed that Mr. Simek did seek damages on his claim of breach of fiduciary duty.  The Wyoming Supreme Court has recognized that such claims "'sound[] in tort,'" and that

-15-

"'[t]he measure of damages [in an action for breach of fiduciary duty] is the amount which will compensate for all the detriment proximately caused by the breach of duty.'" Hulse v. First Am. Title Co. , 33 P.3d 122, 140 (Wyo. 2001) (quoting Hagar v. Mobley , 638 P.2d 127, 139 (Wyo. 1981)). We therefore see no error in the district court's conclusion that the general tort concept of proximate causation was applicable to Mr. Simek's claim for damages, and with its inclusion of this concept in its jury instructions.

In regard to the mitigation instruction, it appears unsettled in Wyoming law whether the duty to mitigate applies to offset a damages award in a breach of fiduciary duty claim. But see Wachovia Bank of Ga., N.A. v. Namik , 620 S.E.2d 470, 473 (Ga. App. 2005) (holding duty to mitigate applied where breach of fiduciary duty was not intentional or fraudulent). However, assuming the court's mitigation instruction was in error, we hold that no prejudice resulted. As indicated above, the jury found that there were no damages that Mr. Simek could have avoided or reduced by reasonable care. Thus, the mitigation instruction could not have affected the outcome of the case.

Aside from the damages issue, Mr. Simek appears to argue that the district court's jury instructions were erroneous because they failed to inform the jury of the availability of a forfeiture remedy, which, unlike damages, does not require proof of causation or mitigation. See, e.g. , Arst v. Stifel, Nicolaus & Co. , 954 F.

Supp. 1483, 1492-93 (D. Kan. 1997). However, as J.P. King points out, Mr. Simek did not indicate in his complaint, in his proposed jury instructions, in his proposed verdict form, or at trial that he was seeking forfeiture or disgorgement as a remedy for J.P. King's breach of fiduciary duty. Mr. Simek first claimed entitlement to disgorgement of all money J.P. King had received in his motion for a new trial.

We recognize that at least one court has held that, where a plaintiff has limited his complaint to certain forms of relief, a district court may nevertheless be obligated under Federal Rule of Civil Procedure 54(c) [5] to instruct the jury on all remedies to which the plaintiff is entitled in light of the evidence presented at trial. See Scutieri v. Paige, 808 F.2d 785, 792 (11th Cir. 1987) (holding that a district court "commits reversible error in not instructing the jury" on punitive damages "[i]f the complaint alleges conduct that would support a claim for punitive damages, and if evidence is presented creating a jury question on such relief" (citing Guillen v. Kuykendall, 470 F.2d 745, 748 (5th Cir. 1972))). We do not consider the district court's lack of a forfeiture instruction error here, however, as Mr. Simek has not cited any conclusive authority for the proposition

[5]Rule 54(c) states that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Fed. R. Civ. P. 54(c).

-17-

that the forfeiture remedy is available for breach of fiduciary duty under Wyoming law. [6]

We therefore affirm the district court on this issue.

## III.   EVIDENCE OF MR. SIMEK'S NET WORTH

Mr. Simek next argues that the district court erred in allowing J.P. King to present evidence indicating Mr. Simek's net worth.  We review the district court's decision to allow the admission of evidence for an abuse of discretion.          Grace

---

[6]We note that the Restatement and some jurisdictions have indicated that a plaintiff claiming a breach of fiduciary duty by an agent may seek both damages and forfeiture of "commissions and other compensation paid or payable to the agent during the period of the agent's disloyalty."  Restatement (Third) of Agency § 8.01 cmt. d(1)-(2)  (T.D. No. 6, 2005); see, e.g., Mabry v. Tom Stanger & Co., 33 P.3d 1206, 1209 (Colo. Ct. App. 2001) (recognizing that under Colorado law, "a real estate broker's breach of a fiduciary duty to a seller results in a forfeiture of the broker's entitlement to a commission, even if the seller has not suffered any demonstrable harm as a result of the breach and even if the breach does not amount to fraud or self-dealing or result in a profit to the broker").  However, we do not believe Rule 54(c) imposes a duty on the district court to recognize this principle as part of Wyoming law at a point where no Wyoming court has done so and neither of the parties had urged it to do so.  In addition, although Mr. Simek has not challenged the district court's entry of judgment under Rule 54(c), either here or in his motion for a new trial, we note that any such challenge would not prevail under the circumstances here because the court's post-trial imposition of a forfeiture remedy would have unfairly prejudiced J.P. King.  See Minyard Enters., Inc. v. Se. Chem. & Solvent Co., 184 F.3d 373, 386 (4th Cir. 1999) (holding that Rule 54(c) does not allow a plaintiff to seek a certain form of relief for the first time after trial where its failure to do so before trial was "unfairly prejudicial" to the defendant).

United Methodist Church, 427 F.3d at 802-03. Here, we hold there was no abuse of discretion. Mr. Simek's objection relates to J.P. King's questioning of Mr. Simek on cross-examination. The questioning, relating to Scott King's initial visit to Mr. Simek regarding his Nevada property, proceeded as follows:

> Q: And what did you think all of that property was worth when you invited Mr. King out to talk to you about it?
>
> . . . .
>
> A. It is anybody's guess.
>
> Q. You actually had a draft document where you projected that it could be sold for 40 million if everything was developed, didn't you?
>
> A. If everything was developed and the lots were sold individually, approximately.

Trial Tr., Appellant's App. Vol. III at 331. Mr. Simek objected to this line of questioning on the grounds of relevance and now further asserts that allowing the introduction of the value of Mr. Simek's Nevada property was prejudicial to Mr. Simek. However, as J.P. King indicates, Mr. Simek's experience with valuable real estate was relevant to J.P. King for the purpose of refuting Mr. Simek's claim that he was taken advantage of through the absolute auction of his Cody property. Moreover, as J.P. King further points out, Mr. Simek had already introduced evidence that in general related to his highly successful business career, beginning with his cofounding of Tombstone Pizza, and specifically related to his purchase of the Nevada property and his plans to develop it into a golf course and

residential lots. Because this evidence already tended to show Mr. Simek's wealth, we do not believe J.P. King's elicitation of the projected value of the Nevada property was unfairly prejudicial. We therefore uphold the district court's ruling on this issue.

## IV. ADMISSION OF COUNTY ASSESSOR'S PROPERTY ASSESSMENT AND WITNESSES' VALUATION TESTIMONY

Mr. Simek also challenges the district court's refusal to exclude J.P. King's introduction of or reference to the county assessor's assessment of Mr. Simek's property, and its refusal to prevent J.P. King from asking witnesses about that document and other appraisals. According to Mr. Simek, the district court should have evaluated the reliability of the assessment and of the witnesses' testimony as expert evidence of the fair market value of Mr. Simek's property pursuant to Daubert v. Merrell Dow Pharm., Inc. , 509 U.S. 579 (1993). We review de novo "whether the district court properly performed its role as 'gatekeeper' pursuant to Federal Rule of Evidence 702 and Daubert." Norris v. Baxter Healthcare Corp. , 397 F.3d 878, 883 (10th Cir. 2005).

Here, we believe the district court had no obligation to analyze the reliability of the assessment under Daubert. J.P. King originally referred to the assessment in order to refresh Mr. Simek's memory regarding the amount of the assessment, for the purpose of asking Mr. Simek whether it was true that "the

purchase price that was obtained at the auction was . . . very close to what the county assessor appraised [Mr. Simek's] house and the secondary building in connection with the house in their 2002 appraisal." Trial Tr., Appellant's App. Vol. III at 326. J.P. King later introduced a certified copy of the assessment into the evidence. As J.P. King points out, that copy was admissible under Federal Rule of Evidence 902(4) as a certified copy of a public record. See Rossi v. United States , 755 F. Supp. 314, 316 (D. Or. 1990) (holding IRS Certificates of Assessments and Payments admissible under Rule 902(4)).

Mr. Simek argues that because J.P. King used the assessment as evidence of the value of Mr. Simek's property, the assessment must be characterized as a "back door" expert opinion. Appellant's Opening Br. at 43. This argument presumes that only expert opinions have possible relevance to the question of a property's value. However, tax records such as the assessment at issue are certainly relevant to the question of value, even if they are not dispositive. See Wyo. Stat. Ann. § 39-13-103(b)(ii) (requiring that "[a]ll taxable property shall be annually valued at its fair market value"); BP Am. Prod. Co. v. Dep't of Revenue , 112 P.3d 596, 608 (Wyo. 2005) (holding that the Wyoming "Department [of Revenue]'s valuations for state-assessed property are presumed valid, accurate,

and correct"). [7] The fact that such a tax record is relevant for this purpose does not automatically subject the record to Daubert analysis where the record is admissible on other grounds and there is no attempt to characterize the tax record as anything other than what it is. In this sense, a certified tax record is distinguishable from factual findings from an investigation that are contained in a government report admissible under Rule 803(8)(C), which courts have held remain subject to Daubert. Cf. Desrosiers v. Flight Int'l of Florida, Inc., 156 F.3d 952, 962 (9th Cir. 1998) (observing that Rule 803(8)(C)'s exclusion of a report's factual findings where "the sources of information or other circumstances indicate lack of trustworthiness," Fed. R. Evid. 803(8)(C), indicates that Daubert remains applicable in that context); Heary Bros. Lightning Prot. Co. v. Lightning Prot. Inst., 287 F. Supp. 2d 1038, 1076 (D. Ariz. 2003) (holding that party could not circumvent Daubert by submitting scientific or technical findings contained in a government report). We therefore affirm the district court's admission of the assessment into evidence.

---

[7]We note that the Wyoming Supreme Court has held that other "relevant evidence of market value" includes the resale price of a property as well as "other sales of the same or similar property, which were transacted reasonably close in time and distance and under comparable market conditions." Piroschak v. Whelan, 106 P.3d 887, 893 (Wyo. 2005) (internal quotation omitted); see also Ely v. Kirk, 707 P.2d 706, 712 (Wyo. 1985) (listing "purchase price of [property] or similar property, attributes good and bad of the particular property, or circumstances in the neighborhood or area having an effect on its value" as relevant factors).

Mr. Simek further claims that J.P. King's questioning of Mr. Hugh Miller, an experienced auctioneer, regarding an appraiser's valuation of Mr. Simek's property was contrary to J.P. King's representation that Mr. Miller would not present expert testimony on valuation. That representation had led the district court to hold that Mr. Simek's prior objection to Mr. Miller's testimony on Daubert grounds was moot. Mr. Simek also protests J.P. King's questioning of Scott King on the appraisal and the assessment. We disagree with Mr. Simek's contention that either Mr. Miller's or Scott King's testimony was subject to Daubert . J.P. King questioned Mr. Miller as follows:

> Q. What if I told you there was an appraisal on the property for either 2 or 2.5 million?
>
> . . . .
>
> A. I never cease to be amazed at how people – how high a regard people hold appraisals. I can sit here and cite you examples of where we have sold properties – well, one that comes to mind immediately is we sold a little farm up in northern Indiana . . . . He appraised this farm for 360,000. We sold the farm and it brought 798,000. I can also sit here and quote you properties that we've sold for substantially less than appraised values. An appraisal is nothing more than one person's opinion of value based on historical information that they gather from the market. And that's all it is.
> The validity of that number that they come up with at the bottom of that appraisal report is in direct proportion to the skill of the person that has compiled the information that went in to making that decision.

Trial Tr., Appellee's Supp. App. Vol. II at 538-40. J.P. King also referenced appraisals and the assessment when questioning Scott King:

Q.  I want to ask you a little bit about value and what we know.  In this case, the testimony has been that there was an appraisal of 2.2 million, county assessor's assessment of 1 point something million.  Tell us, first of all, in your experience, how reliable are either one of those documents in terms of predicting what a property will sell for at an auction?

. . . .

A.  An appraisal is an opinion is what it is.  You know, granted, it is a professional that's tabulated it, but it is using historic comparables, comps that are in the past.  If it is a market that's sliding in value, then those comps will prove a wrong conclusion.  On the other hand, if those values are appreciating, obviously, those comps are going to have a lower value than what it actually should be.
We've had sales higher and lower than appraisals.  So to me an appraisal is an opinion is what it is.
        The tax records is for purposes of determining tax amounts and it is a form of appraisal.

Trial Tr., Appellant's App. Vol. III at 408.  It is clear that J.P. King's questioning

of Mr. Miller and Scott King on these points related to their experience in the

auction business, as regards the relationship between appraisals and tax

assessments and the actual price a property will sell for at an auction.  Neither

Mr. Miller nor Scott King claimed to present their own appraisals of the fair

market value of the property.  Their qualifications to perform such an appraisal

-24-

were thus irrelevant. [8] We therefore conclude that the district court did not err in failing to analyze these witnesses' testimony under Daubert.

## V.   DENIAL OF A NEW TRIAL ON DAMAGES

Finally, Mr. Simek asks us to reverse the district court's denial of his motion for a new trial, or in the alternative additur, based on the inadequacy of the jury's damages award in light of the evidence. We review the district court's denial of a new trial on these grounds for an abuse of discretion. Bainbrich v. Hammon Iron Works, 249 F.2d 348, 349 (10th Cir. 1957). Moreover, "[w]e will not disturb a jury's finding on damages [in a civil trial] unless it is so unreasonable as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial." Bennett v. Longacre, 774 F.2d 1024, 1028 (10th Cir. 1985) (internal quotation omitted).

---

[8]We note that at oral argument, Mr. Simek asserted that under Wyoming law, only licensed appraisers are considered qualified to testify regarding a property's evaluation. However, the Wyoming Supreme Court has stated that "'[w]hether or not a witness has sufficient knowledge or special experience to testify as to his opinion on valuation is within the discretion of the trial court and will be disturbed on appeal only if clearly and prejudicially erroneous and then only in extreme cases.'" Connor v. Bd. of County Comm'rs, 54 P.3d 1274, 1284 (Wyo. 2002) (quoting Ely, 707 P.2d at 712).

In his opening brief, Mr. Simek argued that his own evidence on damages "was uncontroverted and undisputed" because "J.P. King did not call any expert witnesses on the question of value" of Mr. Simek's property, and concluded that the jury's zero damages award was therefore necessarily contrary to the evidence. Appellant's Opening Br. at 46. In response, J.P. King pointed to the testimony of Mr. Miller and Scott King, discussed above, regarding how value is determined through the auction process, as well as to the 2002 certified tax assessment introduced as evidence at trial. In his reply brief, Mr. Simek then appeared to merge his argument on this issue with his attack on the admissibility of the assessment and Mr. Miller's and Scott King's testimony, which we have already discussed above. In light of our resolution of the admissibility issues in J.P. King's favor, we take into account that evidence and conclude that the jury's finding that Mr. Simek did not sustain any damages was not so unreasonable as to warrant a new trial.

Mr. Simek criticizes J.P. King as representing the absolute auction as "the best evidence of fair market value" when "the absolute auction concept is under attack throughout the country and is the subject of numerous lawsuits and claims against auction companies like J.P. King who utilize the absolute auction device." Appellant's Reply Br. at 29. However, the jury heard testimony regarding the "enormous amount of discussion and articles written [and] litigation revolving

around" the absolute auction method, Trial Tr., Appellant's App. Vol. III at 353, and was entitled to conduct its own evaluation of J.P. King's and Mr. Simek's conflicting evidence. The jury's verdict form indicates its determination that Mr. Simek received the fair market value of his property at the auction and that Mr. Simek sustained no damages. There is evidence in the record to support these conclusions. We therefore uphold the district court's ruling on this issue.

## CONCLUSION

For the foregoing reasons, the district court's denial of Mr. Simek's motion for a new trial or for additur is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge